711 A.2d 1006

**Jonathan B. EICHELMAN, Appellant,**

**v.**

**NATIONWIDE INSURANCE COMPANY, Appellee.**

Supreme Court of Pennsylvania.

Argued Dec. 10, 1997.

Decided May 21, 1998.

Jeffrey D. Wright for Jonathan B. Eichelman.

Kim R. Plouffe, Philadelphia, for Nationwide Ins. Co.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION OF THE COURT

CASTILLE, Justice.

The sole issue on appeal is whether a person who has voluntarily elected to forego underinsured motorist coverage on his own vehicle is precluded from recovering underinsured motorist benefits from separate automobile insurance policies issued to family members with whom he resides as a result of a "household exclusion" clause excluding underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage. Because we hold both that this "household exclusion" language precludes the recovery of underinsured motorist benefits under the facts of the case and that this exclusionary language is not against public policy, we affirm the order of the Superior Court.

The relevant facts are not in dispute. On June 25, 1993, appellant Eichelman was injured when his motorcycle was struck by a pick-up truck being negligently operated by another individual. The truck driver's automobile insurance policy provided property damage and bodily injury liability coverage in the amount of one-hundred thousand dollars ($100,000). Upon receipt of appellant's notice of claim, the negligent truck driver's insurance carrier tendered the full

limits of its coverage on the policy. Appellant accepted the tender by the truck driver's insurance carrier. However, appellant avers that the $100,000 failed to totally cover his injuries.

Appellant's motorcycle was insured with Aegis Security Insurance Company ("Aegis") at the time of accident.[1] The Aegis policy did not provide underinsured motorist coverage because appellant had expressly waived such coverage.[2]

Having voluntarily foregone underinsured motorist coverage in his own insurance policy on his motorcycle, appellant then made a claim for such coverage under two insurance policies that appellant's mother and her husband maintained with appellee, Nationwide Insurance Company.[3] At the time of the accident, appellant was thirty-one years old and lived at his mother's residence. Appellant claimed that he was entitled to the underinsured motorist coverage provided by the two policies issued by appellee because each policy provided underinsured motorist coverage for the named insured and any relative who resided with the named insured. Appellee does not dispute that appellant qualified as a relative under each policy.

After reviewing the two insurance policies, appellee denied coverage to appellant under the "household exclusion" clause in each policy which limited underinsured coverage as follows:

1. Aegis sent appellant a notice of cancellation for misrepresentation and fraud approximately five days before the accident. The notice of cancellation, however, provided that coverage was cancelled effective July 23, 1993. Thus, appellant's policy with Aegis was in effect at the time of the accident subject to this appeal.

2. Underinsured motorist coverage provides "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c). While all motor vehicle liability insurance policies issued for vehicles registered in the Commonwealth must offer underinsured and/or uninsured motorist coverage, the 1990 amendments to the Motor Vehicle Financial Responsibility Law made the purchase of underinsured and/or uninsured motorist coverage optional. 75 Pa.C.S. § 1731(a).

3. Appellant's mother was a named insured on a policy issued by appellee which covered a 1993 Toyota Camry. The mother's husband was a named insured on a separate policy issued by appellee which covered a 1993 Toyota Corrolla.

COVERAGE EXCLUSIONS

This [underinsured] coverage does not apply to:

\* \* \*

6. Bodily injury suffered while occupying a motor vehicle owned by you or a relative not insured for Underinsured Motorists coverage under this policy; nor to bodily injury from being hit by any such motor vehicle.

R. 44a. Appellant responded to appellee's denial of his claim for underinsured benefits by filing a complaint requesting a declaratory judgment that he was entitled to such benefits under the two policies issued by appellee and further asserting that the "household exclusion" clause is against public policy. After the close of discovery, appellant filed a motion for summary judgment. On June 16, 1995, the trial court granted appellant's motion. In doing so, the trial court, relying on the Superior Court's memorandum opinion in *Hart v. Nationwide Ins. Co.*, 436 Pa.Super. 652, 647 A.2d 270 (Pa.Super.1994), held that such a "household exclusion" clause contravenes public policy and is void as applied to appellant.

On June 4, 1996, the Superior Court reversed the trial court and found that the "household exclusion" at issue in the case *sub judice* was valid. In making this ruling, the Superior Court noted that the *Hart* decision on which the trial court relied was subsequently reversed by this Court's *per curiam* order in *Hart v. Nationwide Ins. Co.*, 541 Pa. 419, 663 A.2d 682 (1995).[4] Thus, the Superior Court held that the "household exclusion" clause in the two policies issued by appellee barred appellant from recovering underinsured motorist benefits. This Court granted allocatur in order to more fully address whether the "household exclusion" clause in the two insurance policies issued by appellant is enforceable under Pennsylvania law.

Appellant in this case has never argued that the "household exclusion" language in the insurance policies issued by appellee to his mother and her husband is unclear or ambiguous.

**4.** This Court's *per curiam* order in *Hart* cited *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994), as the grounds for reversing the Superior Court.

Neither does appellant dispute that the "household exclusion" language in these two insurance policies clearly and unambiguously bars appellant's recovery of underinsured motorist benefits from these two policies since he suffered his injuries while operating a motor vehicle not insured for underinsured coverage. Instead, the present dispute centers on whether the "household exclusion" provision violates public policy.

 Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. *Antanovich v. Allstate Ins. Co.*, 507 Pa. 68, 76, 488 A.2d 571, 575 (1985). When examining whether a contract violates public policy, this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract. *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 347, 648 A.2d 755, 760 (1994). As this Court has stated:

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Id.* at 347–48, 648 A.2d at 760 (citations omitted). This Court has further elaborated that:

> It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Mamlin v. Genoe*, 340 Pa. 320, 325, 17 A.2d 407, 409 (1941).

 When examining whether the "household exclusion" language in the two insurance policies issued by appellee

violate public policy, this Court must be mindful of the legislative intent behind the Motor Vehicle Financial Responsibility Law ("MVFRL") and its underinsured motorist provisions.[5] As this Court recently stated:

> [T]he repeal of the No–Fault Motor Vehicle Insurance Act, 40 P.S. § 1009.101, and the simultaneous enactment of the MVFRL, reflected a legislative "concern for the spiralling consumer cost of automobile insurance and resultant increase in the number of uninsured motorists driving on public highways."

*Rump v. Aetna Casualty & Surety Co.*, 551 Pa. 339, 710 A.2d 1093 (1998). The purpose behind underinsured motorist coverage is to protect the insured from the risk that a negligent driver of another vehicle will cause injury to the insured and will have inadequate insurance coverage to compensate the insured for his injuries. *Paylor v. Hartford Ins. Co.*, 536 Pa. at 587, 640 A.2d at 1235–36. For the reasons described below, this Court, after considering the above factors, can discern no overriding public policy that forbids a "household exclusion" like that at issue in this case.

One factor this Court must examine is whether there is a unanimity of opinion that the "household exclusion" language contained in the two policies issued by appellee violates public policy. As evidenced by a recent trilogy of decisions from this Court discussed below, there is a lack of unanimity that such language violates public policy.

The trilogy of decisions by this Court began in *Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994). In *Paylor*, the insureds were killed in a single-vehicle accident while operating their motor home, which was insured under a policy issued by Foremost Insurance Company. The decedent insureds also maintained a policy with Hartford Insurance Company covering three other vehicles that they owned. The estate of one of the decedent insureds recovered the policy liability limits from Foremost and then sought to recover underinsured coverage from the Hartford policy. Hartford

**5.** 75 Pa.C.S. § 1701, *et seq.*

denied underinsured coverage based on the "household exclusion" in the Hartford policy. The decedent insureds' estate brought a declaratory judgment action seeking underinsured coverage and a declaration that the "household exclusion" violated public policy and the MVFRL. This Court reviewed several cases involving the "household exclusion" and concluded that the "household exclusion" barred underinsured coverage because the decedent insureds chose to insure the motor home for substantially less than they insured their other three automobiles and therefore the underinsured coverage in the Hartford policy on those cars should not be converted into additional liability coverage for the motor home.

Less than one month after the *Paylor* decision, this Court expanded the applicability of the "household exclusion" in *Windrim v. Nationwide Ins. Co.*, 537 Pa. 129, 641 A.2d 1154 (1994). In *Windrim*, the appellant, while driving his uninsured automobile, was injured by the negligence of an unknown hit-and-run driver. The Appellant sought uninsured coverage under a Nationwide policy maintained by his mother, with whom he had been living at the time. Nationwide denied coverage based on the "household exclusion." This Court held that the exclusion was valid as applied on the basis that relatives living with the named insureds could decide not to purchase insurance for their own vehicles and instead attempt to rely on uninsured motorist coverage under the named insured's policy.

In this Court's third decision in the recent "household exclusion" trilogy, this Court issued a *per curiam* order in *Hart v. Nationwide Ins. Co.*, 541 Pa. 419, 663 A.2d 682 (1995). The facts of *Hart* were distinguishable from *Windrim* in that the motor vehicle which Hart was driving was insured under a separate policy from that which he sought to obtain underinsured benefits. Nationwide invoked a "household exclusion" in the policy from which Hart sought underinsured benefits. Moreover, the "household exclusion" language in *Hart* was virtually identical to the "household exclusion" language at issue in the case *sub judice*. While the lower courts voided the "household exclusion" as against public policy, this Court

reversed those decisions on the basis of its holding in *Windrim*. Thus, the above examination of this Court's case law does not suggest that there is a unanimity of opinion against enforcement of the "household exclusion" language contained in the two policies issued by appellee.

Having determined that there is a lack of unanimity of opinion against the "household exclusion" language at issue, this Court must then examine whether such language is contrary to the public health, safety, morals or welfare of the people. Here, this Court cannot discern, nor does appellant express, how the "household exclusion" language in the two policies issued by appellee is so obviously against the public health, safety, morals or welfare of the people that the clause should not be enforced on public policy grounds.

Finally, this Court must determine if the "household exclusion" language is against the legislative intent behind the MVFRL. As noted above, underinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction. As this Court has stated, "there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 349, 648 A.2d 755, 761 (1994). Here, appellant voluntarily chose not to purchase underinsured motorist coverage. In return for this choice, appellant received reduced insurance premiums. As appellant admitted in his answers to interrogatories, he was not aware that his mother and her husband had insurance policies which could have possibly covered him. Moreover, it is not readily apparent that appellee knew of appellant's existence when it issued the two insurance policies or that the insurance premium charged to his mother and her husband reflected an intent on their part to provide underinsured motorist coverage to appellant. Thus, this Court concludes that giving effect to the "household exclusion" in this case furthers the legislative policy behind underinsured motorist

coverage in the MVFRL since it will have the effect of holding appellant to his voluntary choice.

Allowing the "household exclusion" language to stand in this case is further bolstered by the intent behind the MVFRL, to stop the spiralling costs of automobile insurance in the Commonwealth. If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household. If this result were allowed, it would most likely result in higher insurance premiums on all insureds (even those without family members living at their residence) since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage. Thus, allowing the "household exclusion" language of the two insurance policies at issue to bar recovery by appellant of underinsured motorist benefits is consistent with the intent behind the enactment of the MVFRL.

Therefore, the Court concludes that a person who has voluntarily elected not to carry underinsured motorist coverage on his own vehicle is not entitled to recover underinsured motorist benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous "household exclusion" language explicitly precludes underinsured motorist coverage for bodily injury suffered while occupying a motor vehicle not insured for underinsured motorist coverage. As stated, it is only in the clearest of cases that a court may make an alleged public policy the basis of judicial decision. *See Guardian Life Ins. Co. v. Zerance*, 505 Pa. 345, 354, 479 A.2d 949, 954 (1984). The case *sub judice* is not the clearest of cases, so it is beyond judicial authority to declare the clear and unambiguous "household exclusion" language in the policies issued by appellee to be void as against public policy. If anything, the above analysis demonstrates that allowing the "household exclusion" language to stand supports the legislatively stated public policy of reducing insurance costs. Therefore, this Court finds that the "household exclusion" language in the two insurance policies issued

by appellee is valid. Accordingly, this Court affirms the order of the Superior Court reversing the trial court's award of summary judgment and remanding the matter to the trial court.