**CERTAIN UNDERWRITERS AT LLOYDS, London, United Kingdom**

v.

**Janice HOGAN and Nickels Tavern, Inc., and James G. Nickels, an Individual.**

**Appeal of: Janice Hogan.**

Superior Court of Pennsylvania.

Submitted Jan. 26, 2004.
Filed June 8, 2004.

---

6. *Regis v. Wood,* Nos. 2455 & 2491 EDA 2000, at 5–7.

Bruce W. Miller, Philadelphia, for appellant.

Ronald S. Collins, Jr., Conshohocken, for appellees.

Before: KLEIN, KELLY and POPOVICH, JJ.

POPOVICH, J.

¶ 1 Janice Hogan (Hogan) appeals from the entry of summary judgment in this declaratory judgment action in favor of Certain Underwriters at Lloyds, London, United Kingdom (Lloyds), entered on August 12, 2003, in the Court of Common Pleas, Philadelphia County. The trial court found that the insurance policy issued by Lloyds did not cover the injuries sustained by Hogan during the course of her employment with Nickels Tavern. Upon review, we affirm.

¶ 2 The facts of the underlying the personal injury action are as follows. On November 13, 1999, Hogan, employed by James G. Nickels as a waitress at Nickels Tavern, was in the course of her employment when she fell through a open trap door that had been left open by a co-employee. Hogan fell twelve feet into the cellar storeroom and sustained injuries to her right leg and knee. On the date of the accident, Nickels Tavern did not provide Hogan with workers' compensation coverage as required pursuant to the Pennsylvania Workers' Compensation Act.

¶ 3 On September 25, 2001, Hogan initiated legal proceedings against Nickels Tavern and its owner James G. Nickels as permitted by 77 P.S. § 501.[1] Lloyds, as the issuer of a Commercial General Liability Insurance Policy for Nickels Tavern, was informed of the Hogan lawsuit. Lloyds did not defend the legal action on behalf of Nickels Tavern on the basis of the "employee exclusion" contained in the insurance policy. On May 14, 2002, the trial court conducted an assessment of damage hearing. On May 24, 2002, the trial court entered default judgment in Hogan's underlying lawsuit against Nickels for their failure to answer Hogan's complaint. The trial court awarded Hogan $279,000.00 in damages against Nickels Tavern and James G. Nickels. Lloyds was notified of the award against its insured. Lloyds denied coverage to Nickels Tavern and James G. Nickels and brought an action under the Declaratory Judgment Act. After the initial pleadings, Lloyds filed a motion for summary judgment.

¶ 4 On August 12, 2003, the trial court granted Lloyds' motion for summary judgment and found that Lloyds did not have a duty under its policy to defend or indemnify Nickels Tavern or James G. Nickels with regard to the Hogan lawsuit. The trial court dismissed with prejudice any and all claims against Lloyds arising from

1. 77 P.S. § 501 provides that when an employer fails to carry workers' compensation insurance, the injured employee may bring action at law against the employer.

the Hogan lawsuit. This timely appeal followed. The trial court did not order Hogan to file a 1925(b) statement; however, the trial court authored an opinion addressing its reasoning for entering summary judgment in favor of Lloyds.

¶ 5 On appeal, Hogan raises the following question for our review:

Whether the "employee" exclusion in Lloyds' commercial general liability insurance policy was void as against public policy requiring Lloyds to defend the cause of action against their insureds?

Appellant's brief, at 4.

¶ 6 In a declaratory judgment action, just as in civil actions generally, "summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Harleysville Insurance Companies v. Aetna Casualty and Surety Insurance Company*, 568 Pa. 255, 258, 795 A.2d 383, 385 (2002) (*citing P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 153, 723 A.2d 174, 176 (1999)). A trial court's order granting summary judgment will not be reversed unless it is established that the court committed an error of law or clearly abused its discretion. *See id.*, at 258, 795 A.2d at 385; *see also Cochran v. GAF Corporation*, 542 Pa. 210, 215, 666 A.2d 245, 248 (1995).

¶ 7 The sole issue of Hogan's appeal is whether the employee exclusion in Lloyds' insurance policy was void as against public policy. Words in an insurance policy must be given a reasonable and normal interpretation. *Great American Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 412 Pa. 538, 542, 194 A.2d 903, 905 (1963). Where the language of a policy is clear and unambiguous, a court is required to give effect to that language. *Standard Vene-*

*tian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 305, 469 A.2d 563, 566 (1983). The employee exclusion here denies coverage for bodily injury to an employee of the insured arising out of and in the course of employment by the insured; this exclusion unambiguously operates to bar recovery of expenses resulting from bodily injury of an employee of the insured under policy.

¶ 8 Lloyds claimed and Hogan conceded that she was an employee. Inasmuch as no ambiguity existed regarding the definition of "employee," and as employees were clearly excluded from coverage under the policy, the trial court found that neither Hogan nor Nickels Tavern could recover from Lloyds. The trial court also found that the employee exclusion was not void as against public policy.

¶ 9 Generally, courts are to go no further than the plain meaning of the contract language. However, such language is not controlling if it is contrary to a clearly expressed public policy. *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 563, 711 A.2d 1006, 1008 (1998). In *Eichelman*, our Supreme Court noted:

Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy.... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Id.*, at 563, 711 A.2d at 1008 (quotation and citations omitted).

¶ 10 Hogan argues that to allow the employee exclusion to be valid in an employer's general liability insurance policy where the employer failed to provide workers' compensation insurance would be contrary to public policy. Hogan contends that such exclusion defeats the intent of the Legislature to provide the greatest coverage and an adequate remedy at law to employees injured during the course of employment. While we agree that the Legislature intended to protect injured employees by requiring employers to provide workers' compensation insurance, we disagree that the employee exclusion of a general liability insurance is void as against public policy.

¶ 11 In *Inman v. Nationwide Mut. Ins. Co.*, 433 Pa.Super. 534, 641 A.2d 329 (1994), an injured employee argued that her employer and the employers general liability insurance carrier were liable for injury sustained during the course of her employment where the employer failed to provide workers' compensation insurance. The general liability insurance policy contained an employee exclusion clause stating that the policy did not apply to bodily injury of an employee as a result of the employment. The injured employee argued that the employee exclusion clause was void as against public policy pursuant to § 71 of the Act.[2] We disagreed and found, "A contract of insurance to cover

general liability of the insured cannot be construed, because of a clause which excludes employees' work-related injuries, to violate the [Workers Compensation] Act, which voids any agreements to insulate an employer for future damages arising out of employment." *Id.*, 641 A.2d at 331. We noted that neither the exclusion clause nor the Act prevented the injured employee from seeking damages from employers. We concluded that the employee exclusion clause was not void as against public policy. Further, "to find otherwise would encourage employers to ignore their obligation to obtain workers' compensation insurance and rely on their general liability policy, which in turn necessarily would require a higher premium schedule reflecting the additional risk. Such a result would create an imbalance in procurement of insurance and compound confusion and enforceability of the comprehensive and basic social policy enunciated by the Act." *Id.*, 641 A.2d at 331.

¶ 12 For these reasons stated in *Inman*, we find Hogan's argument to be without merit. Hogan sought damages directly from the employer as provided in the Act, and as the Act intended, this placed the risk and payment for damages where it belonged.

¶ 13 Judgment affirmed.

2. Section 71 provided that agreements between an employer and employee not to hold

employer liable for future injuries were void as against public policy.