**[J-28-2023] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| MATTHEW RUSH AND KATHLEEN MCGROGAN-RUSH, | : | No. 77 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Superior Court dated October 22, |
| | : | 2021 at No. 1443 EDA 2020 |
| | : | Affirming the Order of the |
| v. | : | Northampton County Court of |
| | : | Common Pleas, Civil Division, dated |
| | : | June 26, 2020 at No. C-48-CV- |
| ERIE INSURANCE EXCHANGE, | : | 2019-01979 |
| | : | |
| Appellant | : | ARGUED:  May 23, 2023 |

## CONCURRING OPINION

**JUSTICE WECHT**                           **DECIDED:  January 29, 2024**

I agree that the Superior Court misinterpreted Section 1731 of the Motor Vehicle Financial Responsibility Law ("MVFRL").  I write separately for two reasons.  First, I do not agree that *Burstein v. Prudential Property & Casualty Insurance Co.*, 809 A.2d 204 (Pa. 2002), controls the outcome of this appeal.  Second, I emphasize that, despite today's Section 1731 holding, the regular-use exclusions at issue here nevertheless may be unenforceable under Section 1738, as the trial court held.  Given that the Superior Court affirmed the trial court on an alternative basis—and given that today we reject that alternative basis—I would remand this matter to the Superior Court for consideration of the Section 1738 issue.

**I.**

Section 1731 of the MVFRL requires automobile insurers to offer their customers uninsured and underinsured motorist coverage ("UM" and "UIM," respectively).[1] Though these coverages must be *offered*, they are entirely optional. An insured who wishes to waive UM/UIM coverage can do so by signing a Section 1731 waiver form.[2]

Separate and apart from Section 1731's waiver-of-coverage provision, Section 1738 of the MVFRL provides that, when multiple vehicles are insured on one or more policies, any UM/UIM coverage is "stacked" by default, meaning that the amount of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured."[3] While UM/UIM coverage is stacked by default, named insureds may elect to waive stacked limits of coverage in exchange for a reduced premium by signing a Section 1738 waiver form.[4]

In many decisions spanning the decades, this Court considered and rejected the argument that the General Assembly intended to forbid household vehicle exclusions, regular use exclusions, and other similar provisions that limit the scope of the policy's included UM/UIM coverage.[5] These cases fall into two broad categories: plain language

---

[1]  75 Pa.C.S. § 1731(a) (providing that "[n]o motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth . . . unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto").

[2]  *Id.* § 1731(b) ("The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form . . . .").

[3]  *Id.* § 1738(a).

[4]  *Id.* §§ 1738(b)-(c).

[5]  The Majority refers to provisions limiting the scope of UM/UIM coverage as "portability" restrictions given that they prevent the insurance from "following the person." Majority Opinion at 26 ("[B]y finding that UIM coverage is mandatory in virtually all instances, absent an insured's voluntary waiver of such coverage, the coverage would necessarily have to follow the person[.]"); *see generally* Theodore J. Smetak, (continued…)

decisions and "public policy" decisions.[6]  The plain language cases address whether the exclusion at issue violates the text of the MVFRL, whereas the contention in "public policy" cases is that the challenged exclusion is void as against some nebulous "public policy" that assertedly favors one side or the other.

One of our earliest public policy cases, *Eichelman v. Nationwide Insurance Co*., 711 A.2d 1006 (Pa. 1998), involved a motorcyclist struck by an underinsured driver.  The motorcycle was covered under its own policy, issued by Aegis Security Insurance Company ("Aegis").  Though the Aegis policy lacked UM/UIM coverage altogether,

---

*Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era*, 24 Wm. Mitchell L. Rev. 857, 905 (1998) (stating that "[g]eographic exclusions prevent the insurance from 'following the person'").

[6]      While the rule that courts should decline to enforce contracts that are against public policy is, of course, a well-established common law principle, this Court's MVFRL decisions have strained the doctrine beyond recognition.  Correctly understood, the doctrine merely allows courts to invalidate contractual provisions if they "conflict[t] with a statutory enactment, a long-established governmental practice, or obvious ethical or moral standards."  *Eichelman v. Nationwide Ins. Co*., 711 A.2d 1006, 1008 (Pa. 1998); *Hall v. Amica Mut. Ins. Co*., 648 A.2d 755, 760 (1994) ("Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest.").

In the MVFRL arena, however, this Court routinely entertains the argument that an insurance policy provision is unenforceable because it conflicts not with the text of the MVFRL, but with the supposed intent behind the law.  *See, e.g., Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1265 (Pa. 2019) (considering the argument that unlisted resident driver exclusions are unenforceable because they undermine "the Commonwealth's objective of limiting the number of uninsured motorists on Pennsylvania roadways").  As I have explained in the past, this approach is problematic.  Courts should not "invalidate contractual provisions based upon vague and nebulous public policy concerns, not even if the General Assembly most likely shared (though failed to codify) those same concerns."  *Id.* at 1271 (Wecht, J., concurring).  To make matters worse, the Justices of this Court have never agreed regarding the General Assembly's putative intent in enacting the Motor Vehicle Financial Responsibility Law, leading the Court to issue conflicting decisions on the subject.  *See id.* at 1268 (recounting our Court's various conflicting pronouncements and noting that, "while a majority of the members of this Court have indicated that cost containment should not be considered the dominant public policy underlying the MVFRL, it is clear that it remains one of the policy concerns to be considered").

Eichelman lived with his parents, who owned two cars, each of which was covered under its own Nationwide insurance policy that included UM/UIM coverage.

When Eichelman tried to collect UIM benefits under the Nationwide policies as a resident relative, the insurer denied the claim, citing household-vehicle exclusions in both of the policies stating that coverage does not apply to "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative not insured for [UM/UIM] coverage *under this policy*; nor to bodily injury from being hit by any such motor vehicle."[7]  Because Eichelman was injured while occupying his motorcycle—a vehicle not insured for UM/UIM coverage "under this policy"—Nationwide denied the claim.

On appeal, our Court unanimously upheld the denial of coverage and rejected the insured's argument that the household-vehicle exclusion violated public policy.  We explained that the exclusion was unambiguous, and we discerned no clear public policy that would require judicial invalidation of the provision.  We also noted that the cost-containment rationale underlying the MVFRL weighed in favor of enforcing the exclusion, since invalidating it "would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household," which "would most likely result in higher insurance premiums on all insureds[.]"[8]

While *Eichelman* stands for the proposition that a household vehicle exclusion is enforceable against an insured who waives UM/UIM coverage in the first instance, a different situation arises when the insured has not waived UM/UIM coverage.  That was

---

[7]    *Eichelman*, 711 A.2d at 1007 (emphasis added).

[8]    *Id.* at 1010 ("[U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction.").

the fact pattern in *Erie Insurance Exchange v. Baker*, 972 A.2d 507 (Pa. 2008) (OAJC), where the named insured owned three automobiles (all insured by Erie Insurance) and one motorcycle (insured by Universal Underwriters Insurance Company). Unlike in *Eichelman*, both the motorcycle policy and the automobile policy included stacked UIM coverage. While operating his motorcycle, the insured was injured by an underinsured motorist. Universal Underwriters paid UIM benefits under the motorcycle policy, but Erie denied the insured's claim for stacked UIM benefits because the automobile policy included a household-vehicle exclusion.

While the appellant in *Eichelman* challenged the household vehicle exclusion on general public policy grounds, the argument in *Baker* was a plain language one. The question was whether the household vehicle exclusion constitutes a "disguised waiver" of stacking that violates Section 1738 of the MVFRL, which contains strict rules for waiving stacking. Baker's argument was that, because he did not sign the mandatory stacking-waiver, the household vehicle exclusion could not take away coverage that the statute says insurers must provide if not waived.

The *Baker* OAJC—authored by Justice Greenspan and joined by Chief Justice Castille and Justice Eakin—rejected Baker's disguised-waiver argument. The lead opinion held that "application of the household exclusion in this case does not involve 'stacking' at all."[9] Rather, "the Erie policy exclusion is a valid and unambiguous preclusion of coverage of unknown risks, and it was properly applied to the circumstances of this case."[10]

_____

[9]     *Baker*, 972 A.2d at 511 (OAJC).

[10]     *Id.* Then-Justice Saylor concurred in the result and supplied the fourth vote in support of the Court's general holding that Erie's household vehicle exclusion was valid and enforceable. *Id.* at 514 (Saylor, J., concurring). Justice Saylor opined that "it is most reasonable to treat these exclusions as going to the scope of the UM/UIM coverage in the first instance, before stacking questions are reached, rather than as an aggregation (continued…)

Besides *Eichelman*, there are two other public policy decisions relevant here: *Burstein v. Prudential Property & Casualty Insurance Co.*, 809 A.2d 204 (Pa. 2002), and *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011), both of which involved regular-use exclusions.[11] In *Burstein*, a husband and wife were struck by an underinsured motorist while occupying a company vehicle that was owned and insured by the wife's employer. Because the employer's insurance policy did not include UIM coverage, the Bursteins sought UIM benefits from their own insurer, Prudential, which denied coverage based on the regular-use exclusion in the couple's policy.

The Bursteins then sued Prudential, arguing that the regular-use exclusion is void on public policy grounds. The case made its way to our Court, and we enforced the exclusion. We rejected the argument that some implied "public policy" favoring "universal portability" could be discerned from the MVFRL.[12] We also noted that voiding the exclusion would seemingly *frustrate* one of the MVFRL's primary objectives, since

---

question arising under the stacking provisions." *Id.* at 515 (Saylor, J., concurring) (stating that the General Assembly likely regarded the enforceability of exclusionary clauses as an issue "separate and apart from priority-of-recovery and stacking questions"). Though the lead opinion in *Baker* was a three-Justice OAJC, a majority of the Court agreed that the household vehicle exclusion is not a "disguised waiver" of stacking that skirts the express waiver requirements of the MVFRL. *See id.* (Saylor, J., concurring) (agreeing that "the amendments to the MVFRL codified at Section 1738 do not invalidate long-standing policy exclusions").

[11] A regular-use exclusion resembles a household-vehicle exclusion, except that it carves out from the scope of UM/UIM coverage accidents occurring while the insured occupies a vehicle that the insured regularly uses but which is not covered under the policy in question.

[12] *Burstein*, 809 A.2d at 209 (concluding that "UM and UIM benefits do not necessarily 'follow the person'"); *id.* at 208-09 (explaining that "universal portability," in this context, means that the insurance always "follow[s] the person, not the vehicle").

insurers "would be compelled to underwrite unknown risks," which in turn would lead to premium increases across the board.[13]

After *Burstein* came *Williams*.[14]  There, a Pennsylvania State Police ("PSP") trooper was injured while operating a vehicle owned by the PSP.  When the trooper sought UIM benefits under his personal auto insurance policy, GEICO denied the claim based on the policy's regular-use exclusion.  The trooper argued, contrary to *Burstein*, that the clause was void as against public policy.  But the argument was slightly different from the one advanced in *Burstein*.  *Williams* essentially asked our Court to carve out a narrow public policy exception for emergency first responders.  The trooper argued that statutory provisions such as the Heart and Lung Act, the Workers' Compensation Act, the Pennsylvania Occupational Disease Act, and the Emergency Medical Services System Act, all illustrate the legislature's desire to protect and provide benefits for first responders.[15]  Thus, the trooper argued that denying him UIM benefits would violate the general "public policy" underlying those statutes.

The *Williams* Court rejected this argument.  The Court stated that, "if any public policy can be derived from these statutes, it is clear that the statutes favor requiring the first responder's employer to protect its employee, rather than any private person or entity."[16]  The Court therefore held that, even if the trooper was correct concerning the legislature's desire to protect first responders, this would not allow invalidation of the

---

[13]  *Id.* at 208 ("Here, voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure.").

[14]  *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011).

[15]  *See* 53 P.S. §§ 631-640 (the Heart and Lung Act); 77 P.S. §§ 1-2710 (the Workers' Compensation Act); 77 P.S. §§ 1201-1603 (the Pennsylvania Occupational Disease Act); 35 Pa.C.S. §§ 8101-8158 (the Emergency Medical Services System Act).

[16]  *Williams*, 32 A.3d at 1203.

regular-use exclusion. The Court emphasized that it is "not the proper function of this Court to weigh competing public policy interests;" that task is "best suited for the legislature."[17] We also analogized the case to *Burstein*, stating that:

> The crucial factors underlying *Burstein* and the instant case are identical—an employee injured while driving his employer-owned vehicle attempted to recover UIM benefits from his private insurer without compensating the insurer for that unknown risk. In that regard, we find that Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected. *Hall*, 648 A.2d at 761. Therefore, we reaffirm *Burstein* and hold that the regular-use exclusion is not void as against public policy.[18]

While *Williams* was primarily a public policy decision, we also briefly addressed the argument that the regular-use exclusion violates the plain language of Section 1731, which requires insurers "to obtain written waivers of UIM coverage signed by the insured on the form established in the statute."[19] *Williams* rejected the argument that the regular-use exclusion at issue was acting as a "disguised waiver" of UM/UIM coverage under Section 1731. Our analysis of the question noted that a plurality of the Court had rejected a similar disguised-waiver argument in *Baker*, albeit in the context of Section 1738. We therefore concluded that, as in *Baker*, the exclusion "as applied here is neither an implicit waiver of coverage nor an improper limitation on the statutorily mandated coverage."[20] Instead, we opined that the exclusion was operating as "a reasonable preclusion of

---

[17] *Id.* at 1204.

[18] *Id.* at 1206 (citation modified).

[19] *Id.* at 1207.

[20] *Id.* at 1208.

coverage of the unknown risks associated with operating a regularly used, non-owned vehicle."[21]

That brings me to *Gallagher v. GEICO*, 201 A.3d 131 (Pa. 2019), where this Court veered off course. *Gallagher* ignored precedent and accepted the exact same disguised-waiver argument that we rejected in *Baker* and *Williams*. The insured in *Gallagher* was injured when his motorcycle was struck by an underinsured motorist. At the time of the accident, GEICO insured Gallagher's motorcycle under a policy that included $50,000 of UM/UIM coverage. Gallagher also owned two automobiles, which GEICO insured under a separate policy that included UM/UIM coverage of $100,000 per vehicle. Gallagher did not waive stacking on either of his GEICO policies. After Gallagher's accident, GEICO paid out the policy maximum under the motorcycle policy, but rejected Gallagher's claim for stacked benefits under the automobile policy, citing a household vehicle exclusion. The lower courts, citing *Baker*, enforced the exclusion as GEICO requested.

There was one key difference between *Gallagher* and *Baker*: Gallagher's vehicles were insured by a single company (GEICO), whereas Baker had one insurer for his motorcycle and a different insurer for his automobiles. Before our Court, Gallagher tried to distinguish *Baker* on this basis. He argued that GEICO's household-vehicle exclusion should be invalidated specifically because it was GEICO that unilaterally decided to issue separate policies for the Gallagher household. Gallagher emphasized that the *Baker* OAJC stressed that the household vehicle exclusion in that case operated to protect the insurer from being forced to cover a risk (*i.e.*, the insured's motorcycle) about which it did not know and which it did not collect sufficient premiums to underwrite. In *Gallagher*, however, such concerns did not exist given that GEICO knew about Gallagher's motorcycle.

---

[21]    *Id.*

Instead of simply distinguishing *Baker* on this basis, the *Gallagher* majority overturned *Baker* and embraced the long-rejected disguised-waiver argument.[22]   I dissented in *Gallagher*, essentially agreeing with then-Justice Saylor's conclusion in *Baker* that "[i]t is far more likely that the General Assembly intended for courts to evaluate the scope of applicable coverage before considering whether the limits of that coverage should be stacked or unstacked."[23]   I also noted that, elsewhere in the MVFRL, the General Assembly unambiguously prohibited certain kinds of exclusions.[24]  This suggests that, had the General Assembly intended to prevent insurers from including household-vehicle exclusions in their policies, it would have said so explicitly.  I also emphasized that the *Gallagher* majority's rationale necessarily would prohibit the enforcement of *any* exclusion that prevents an insured from collecting stacked UM or UIM benefits, since any contractual provision other than a Section 1738 waiver similarly could be characterized as a "*de facto* waiver" of stacking.[25]

## II.

In the instant case, the trial court below held that, like the household-vehicle exclusion in *Gallagher*, the regular-use exclusions at issue here are disguised waivers of

---

[22]     *Gallagher*, 201 A.3d at 138 (holding that the household vehicle exclusion "is inconsistent with the unambiguous requirements Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL").

[23]     *Id.* at 142 (Wecht, J., dissenting).

[24]     75 Pa.C.S. § 1724(b) ("Provisions of an insurance policy which exclude insurance benefits if the insured causes a vehicular accident while under the influence of drugs or intoxicating beverages at the time of the accident are void.").

[25]     *Gallagher*, 201 A.3d at 142 (Wecht, J., dissenting) ("If GEICO's household vehicle exclusion is unenforceable because, as the Majority tells us, it 'acts as a *de facto* waiver of stacking,' then all UM/UIM exclusions must necessarily be unenforceable.").

stacking that violate the plain language of Section 1738 of the MVFRL.[26]  Agreeing with my dissent in *Gallagher*, the trial court stated:  "Clearly, logic dictates that if [GEICO's] household exclusion violates the language of the [MVFRL], then so does Erie's regular-use exclusion."[27]

The Superior Court affirmed the trial court's decision, albeit on an alternative basis. The Superior Court held that the exclusion violate*s* MVFRL Subsection 1731(c), which the panel emphasized "requires UIM coverage in those situations where an insured is injured arising out of the 'use of **a** motor vehicle.'"[28]  In the Superior Court's view, enforcing the regular-use exclusions in this case would limit Subsection 1731(c)'s "coverage mandate to situations where an insured is injured arising out of [the] 'use of an owned or occasionally used motor vehicle,'" which is inconsistent with the text of Subsection 1731(c).[29]

I agree with the Majority that the Superior Court's statutory interpretation bases far too much upon far too little.[30]  As I explained in my dissent in *Gallagher,* if the General Assembly truly intended to prohibit certain kinds of exclusions, it most likely would have said so explicitly, as it did in other contexts.  It is not realistic to suggest that the General Assembly intended to ban all UM/UIM exclusions when it used the phrase "use of **a** motor

---

[26]    Trial Court Opinion, 6/29/2020, at 14 ("[U]nder the *Gallagher* rationale, Erie's exclusion operates as a disguised waiver UIM coverage which circumvents the MVFRL requirement to obtain the insured's written waiver.").

[27]    *Id.* at 11.

[28]    *Rush v. Erie Ins. Exch.*, 265 A.3d 794, 797 (Pa. Super. 2021) (quoting 75 Pa.C.S. § 1731(c); emphasis supplied by the Superior Court).

[29]    *Id.*

[30]    *See* Majority Opinion at 33 n.26 (stating that "Section 1731(c) describes the basic concept of UIM coverage, but it cannot be read as a formula or a mandate that UIM coverage be provided to any person—a named insured or anyone else").

vehicle."[31]   It strains credulity to maintain that the General Assembly would have expressed something so important in such a cryptic fashion.

Notwithstanding that area of agreement, I must distance myself from the bulk of the Majority's analysis.  As the Majority sees it, the Superior Court's novel reading of Subsection 1731(c) directly conflicts with our holding in *Burstein*, where we rejected the argument that there exists some nebulous "public policy" favoring "universal portability of UM and UIM coverage."[32]   In the Majority's telling, because the Superior Court's interpretation of Subsection 1731(c) would lead to the conclusion that all UM/UIM exclusions are unenforceable, "[t]here is no material difference between the Superior Court's holding in *Burstein* and its holding in the instant matter[.]"[33]

The Majority's mistake is that it fails to appreciate the difference between public policy decisions (like *Burstein*) and plain language decisions (like *Gallagher* and the decision below).  The Majority's error is, to some extent, understandable.  Our decisions stress that public policy is to be ascertained "through long governmental practice[,] *statutory enactments*, [or] violations of obvious ethical or moral standards[.]"[34]  Ergo, our holding in *Burstein,* where we said that there exists no apparent public policy requiring universal portability of UM/UIM coverage, theoretically should also foreclose the Superior Court's plain language holding that Subsection 1731(c) bars all UM/UIM exclusions.[35]

---

[31]     75 Pa.C.S. § 1731(c) (emphasis added).

[32]     *Burstein*, 809 A.2d at 208-09.

[33]     Majority Opinion at 33.

[34]     *Eichelman*, 711 A.2d at 1008 (quoting *Hall*, 648 A.2d at 760).

[35]     *See* Majority Opinion at 34 ("The *Burstein* Court, by rejecting the argument that UIM coverage is not amenable to insurance policy exclusions because the coverage is universally portable, directly addressed the question before us."); *id.* at 33 (stating that (continued…)

At the same time, it would be a complete fiction to suggest that, in declining to find an unstated "public policy" underlying the MVFRL favoring universal portability, we necessarily rejected every conceivable plain language argument that would result in all UM/UIM exclusions being unenforceable. Each plain language argument must be evaluated on its own terms. It is not enough to invoke *Burstein* as a sort-of analytical shortcut. In *Williams*, for example, when we addressed the argument that a regular-use exclusion conflicted with the plain language of Section 1731(c), we did not merely cite *Burstein* for the proposition that UM/UIM coverage is not universally portable. While we did discuss *Burstein*, we also engaged in statutory interpretation and held that the regular-use exclusion was "neither an implicit waiver of coverage nor an improper limitation on the statutorily mandated coverage," but was rather "a reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle."[36]

All of this is to say that, while I agree with the Majority that the Superior Court's interpretation of Section 1731 was incorrect, I fear that the Majority's analysis creates a real risk that future courts will misread *Burstein* and conclude that the decision forecloses all sorts of novel interpretations that the *Burstein* Court never even had occasion to consider.[37]

---

the panel below "provided the same answer as the Superior Court in *Burstein* under the guise of answering a different question").

[36] *Williams*, 32 A.3d at 1208. The *Williams* Court's analysis is notable given that it relied upon *Baker*, which our Court subsequently overturned in *Gallagher*. *Id.* (concluding that the insured's "disguised waiver" argument failed for the same reason that the argument failed under Section 1738 in *Baker*).

[37] The Majority proves my point when it incorrectly claims that the statutory argument before us is "one of the same arguments" that we rejected in *Burstein*. Majority Opinion at 25 n.18. Again, the *Burstein* court simply did not consider whether—as the Superior Court below held—the exclusion is unenforceable because it conflicts with Section 1731(c)'s coverage mandate. *Burstein* merely rejected the "broad" and "wide" public policy argument that UIM coverage is personal in nature and therefore ought to be (continued…)

"essentially portable" without being limited by insurance policy exclusions. And while it's true that the *Burstein* court rejected this public policy argument by analyzing the text of the MVFRL, the Court discussed only Section 1713 (the "source of benefits" provision) and Section 1733 (the "priority of recovery" provision). The *Burstein* Court's analysis does not cite, let alone discuss, Section 1731. *Compare Burstein*, 809 A.2d at 209 ("[T]he only issue in this appeal is whether the regularly used, non-owned car exclusion and its contractual restraint on UIM portability violate a clearly expressed public policy."), *with Rush*, 265 A.3d at 797 ("This exclusion conflicts with the broad language of Section 1731(c), which requires UIM coverage in those situations where an insured is injured arising out of the 'use of a motor vehicle.'"), *and* Majority Opinion at 33-34 (claiming that "[t]he *Burstein* Court, by rejecting the argument that UIM coverage is not amenable to insurance policy exclusions because the coverage is universally portable, directly addressed the question before us.").

The Majority concedes that *Burstein* did not even mention Section 1731(c), but nevertheless persists in the belief that the *Burstein* court must have meant something other than what it said. The Majority cherry-picks a section from one of the appellate briefs in *Burstein* (the appellee's, no less) and insists that the Section 1731(c) issue that the Court never addressed was the only relevant argument raised in *Burstein*. Majority Opinion at 35 n.28. That's simply wrong. A far larger share of the brief that the Majority selectively quotes is dedicated to arguing that the challenged exclusion is contrary to the "liberal compensatory intent" underlying the MVFRL and its predecessor legislation. *See* The Bursteins' Brief, 2000 WL 35831075, at 7; *id.* at 11 ("[M]otorists that act responsibly in purchasing insurance should continue to reap the benefits of a liberal compensatory scheme."); *id.* at 12 ("The policy exclusion in the instant case is contrary to the public policy considerations behind both the MVFRL and the [Uninsured Motorist Act] and it is not advantageous to the insured."). Indeed, the Bursteins' brief—just like the *Burstein* Court's opinion—states in no uncertain terms that "[t]he only issue in this appeal is whether the enforcement of Prudential's 'regularly used non-owned car' exclusion would be violative of public policy." *Id.* at 6.

Besides that broad public policy argument, the Bursteins also made textual arguments that go well beyond the one that the Superior Court below embraced. For example, the Bursteins relied upon the language of Section 1731(b) in one argument and in another offered a *de facto* waiver rationale similar to the one that a majority of this Court would later accept in *Gallager* in the context of Section 1738. *Id.* at 22; *id.* at 24 ("Since the Bursteins neither owned nor were a named insured on the vehicle that they occupied at the time of the accident, there was never a valid offer or rejection of UIM coverage as is required by 75 Pa.C.S. § 1731."). Furthermore, the appellant in *Burstein* challenged the Superior Court's decision with a laundry list of distinct textual arguments. *See* Brief for Prudential, 2000 WL 35462353, at 23 (discussing MVFRL Sections 1711, 1712, 1786, and 1733). It is therefore utter fiction to suggest that the "**only** argument explicitly in support of finding universal portability of UIM coverage" in *Burstein* was the precise textual argument that the Superior Court below accepted. Majority Opinion at 35 n.28 (emphasis in original). Thus, even if one believes that it is a useful exercise to rake (continued…)

## III.

Finally, I emphasize that the Majority's decision today is fairly narrow. The decision merely holds that the Superior Court's interpretation of Section 1731 was incorrect. The Majority does not meaningfully address the trial court's conclusion that Erie's regular-use exclusions violate Section 1738 of the MVFRL under the reasoning of *Gallagher*. As explained above, the *Gallagher* Court held that any contractual provision other than a Section 1738 waiver that operates to deprive an insured of stacked UM/UIM coverage is an unenforceable "*de facto* waiver of stacked UIM coverage provided for in the MVFRL[.]"[38] This holding, we were told, was based on the plain and unambiguous language of Section 1738.[39] That being the case, it logically makes no difference whether the exclusion in question is a household-vehicle exclusion, a regular-use exclusion, a dangerous-activities exclusion, or any other kind of exclusion. If it's not a Section 1738 waiver, it's not a Section 1738 waiver.

The Section 1738 issue in this case is complicated somewhat by *Erie Insurance Exchange v. Mione*, 289 A.3d 524 (Pa. 2023), a decision which came out after the lower courts ruled in this matter. *Mione* explained that *Gallagher*'s *de facto* waiver rationale applies only when the insured is actually attempting to *stack* UM/UIM benefits under Section 1738.[40] Here, I would remand this matter so that the Superior Court can consider

---

through twenty-three-year-old appellate briefs in an effort to retrospectively revise this Court's past decisions, the Majority's argument nevertheless remains baseless.

[38]    *Gallagher*, 201 A.3d at 138 (concluding that the policy's household-vehicle exclusion "is inconsistent with the unambiguous requirements Section 1738 of the MVFRL under the facts of this case insomuch as it acts as a *de facto* waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form").

[39]    *Id*.

[40]    *Mione*, 289 A.3d at 531 ("[F]or a household vehicle exclusion to be acting as an impermissible waiver of stacking, the insured must have received UM/UIM coverage (continued…)

the trial court's Section 1738 analysis in the first instance and determine how our decision in *Mione* applies under these specific facts. Along these lines, I note that, although Matthew Rush received UIM benefits under the City of Easton's insurance policy, it does not appear that he was a named insured under that policy.[41] Regardless, even if it turns out that the regular-use exclusions here do not violate Section 1738 under these facts, there is no question that *Gallagher*'s misguided *de facto* waiver rationale will render the exclusions unenforceable in other circumstances. While certain parts of the Majority opinion read like a celebration of regular-use exclusions broadly, it should be acknowledged that blanket enforcement of such exclusions is not guaranteed in a post-*Gallagher* world.[42]

In sum, while I believe that the Majority overstates the significance of our holding in *Burstein*, I ultimately agree that the Superior Court's interpretation of Section 1731 was incorrect. I note, however, that the Superior Court has yet to review the trial court's conclusion that the challenged exclusions are unenforceable under Section 1738. Thus, I would remand this matter to the Superior Court for further review.

---

under some other policy first, or else Section 1738 is not implicated at all."); *see also Generette v. Donegal Mutual Insurance Co.*, 957 A.2d 1180, 1190 (Pa. 2008) (holding that Section 1738 applies "only to 'insureds' as defined by Section 1702, which does not include guest passengers").

[41]     R.R. 553a. (listing the named insured as "City of Easton").

[42]     *See*, *e.g.*, Majority Opinion at 34 (mentioning the "decades of reliance by insureds and insurers"); *id.* at 35 (referring to the regular-use exclusion as "a permissible limitation of UIM coverage").