**H & R BLOCK EASTERN
TAX SERVICES, INC.**

v.

**Denise ZARILLA, and Gardener's Tax
and Financial Services, Inc.**

**Appeal of Denise Zarilla.**

Superior Court of Pennsylvania.

Argued Dec. 5, 2012.
Filed April 11, 2013.

William G. Cohen, New Castle, for appellant.

Julianne P. Story, Kansas City, MO, for appellee.

BEFORE: PANELLA, ALLEN, and STRASSBURGER,* JJ.

OPINION BY STRASSBURGER, J.:

Appellant, Denise Zarilla, appeals from the June 30, 2011 order granting summary judgment in favor of Appellee H & R Block Eastern Tax Services, Inc. (H & R Block). We affirm.

The trial court offered a summary of the underlying facts.

[Appellant] worked for H & R Block in various capacities from January of 1982 until her termination on March 13, 2002. Starting with the 1999 tax season, she was employed as a seasonal tax preparer. H & R Block employed seasonal tax preparers annually for a period beginning shortly before the tax season and ending shortly after it. After the term of employment ended, former seasonal tax preparers were required to reapply for the position before the next tax season. Seasonal tax preparers were also required to sign certain documents, including a Tax Professional Employment Agreement, each year as a condition of employment.

On December 4, 2001, in preparation for the upcoming tax season, [Appellant] signed a Tax Professional Employment Agreement (hereinafter, the "Agreement"), as well as a code of conduct, an anti-discrimination policy, a security policy, a Field Seasonal Associate Handbook (hereinafter, the "Handbook"), and an Addendum for Individual Retirement Account Services and Modification of Employment Agreement (hereinafter, the "Addendum"). The Agreement outlined, among other things, the duties, hours, term of employment, and compensation of tax preparers as well as H & R Block's right to terminate employees for cause. The Addendum required employees to advise clients of individual retirement account options and to provide service to establish such accounts. The handbook elaborated on the overtime policy.

On March 13, 2002, approximately three months after signing the Agreement and one month before the end of that term of employment, H & R Block fired [Appellant]. The stated reasons for the termination were that [Appellant] worked excessive and unauthorized overtime, that she was in possession of

---

* Retired Senior Judge assigned to the Superior Court.

confidential client information outside of the office, that she refused to uniformly offer IRAs to certain clients, and that she failed to act in a professional manner in the workplace. As a result of the termination, [Appellant] was not paid any of the additional compensation provided for in section 8 of the Agreement.

Shortly after being terminated, [Appellant] secured a position with Gardener's Tax and Financial Services, Inc., a competitor of H & R Block's. Viewing this as a violation of the non-competition, non-solicitation, and non-disclosure provisions of the Agreement, H & R Block initiated a civil action against [Appellant] and Gardner's Tax and Financial Services, Inc. On October 1, 2003, this Court entered an Order granting H & R Block's Motion for Preliminary Injunction with respect to the non-solicitation and non-disclosure provisions of the Agreement and denying the Motion with respect to the non-competition provision. On appeal, the Superior Court of Pennsylvania reversed the decision to grant the injunction and remanded for further proceedings. [*See H & R Block Eastern Tax Services, Inc., v. Zarilla*, 894 A.2d 827 (Pa.Super.2005) (unpublished memorandum).] H & R Block later discontinued this portion of the lawsuit on August 20, 2009.

On January 26, 2004, [Appellant] filed a counterclaim against H & R Block, alleging breach of contract, violation of the Wage Payment and Collection Law, wrongful firing, and loss of consortium. Following discovery, H & R Block filed [its] Motion for Summary Judgment on August 31, 2010. The parties exchanged briefs, and, on March 28, 2011, [the trial court] heard argument on H & R Block's Motion.

Trial Court Opinion, 6/30/2011, at 2–3.

On June 30, 2011, the trial court issued an order and opinion granting H & R Block's motion for summary judgment as to all of Appellant's claims. This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

We address an appeal from an order granting summary judgment mindful of the following.

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of her cause of action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate

Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

> Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure.

*Lineberger v. Wyeth,* 894 A.2d 141, 145–146 (Pa.Super.2006) (internal citations omitted).

■ All four of Appellant's appellate issues are predicated on her argument that the Agreement itself is unconscionable due to the forfeiture provision contained in paragraph 8 of the Agreement, which she alleges was enforced by H & R Block in bad faith in order to avoid paying Appellant bonuses, commissions, and overtime. Appellant's Brief at 14.[1] Assuming this to be true, Appellant then asks us to consider whether the trial court erred in granting

1. The relevant terms of the Agreement are as follows.

2. The term of the Agreement commences on the earlier of the date it is executed or on the date the Associate first attended mandatory Policy & Procedure training in preparation for the performance of Associate's duties hereunder and shall end on April 15, 2002, unless terminated sooner as hereinafter provided. For the purposes of this Agreement, "Tax Season" means the term of this Agreement.

\* \* \*

4. Compensation. As wages for services rendered during the Tax Season, the Company shall pay Associate an hourly rate of pay, the amount of which shall be from time to time agreed upon by the parties. Unless such rate is subsequently revised, the rate will be the rate reflected in Associate's first payroll check stub. One and one-half times the hourly rate in effect during an established work week will be paid for hours worked beyond forty (40) in such work week, and wages will be paid biweekly. The Company shall withhold from all compensation payable to Associate, including any additional compensation due and payable under Section 5, below, all federal, state and local taxes required by law to be so withheld.

\* \* \*

5. Additional Compensation. As additional compensation, the Company shall pay Associate, on or before May 10th following the termination of this Agreement, the amount (if any) by which the total of the following amounts exceeds the aggregate wages paid by the Company to Associate under Section 4, above, during the Tax Season[. The Agreement provides for multiple bonuses and incentives, including payments of percentages for filing fees and fees charged for certain products and services sold by Associate during the Tax Season. Additionally, Associates are eligible for 20% of "Associate Volume" for returns prepared by Associate during the Tax Season as well as a "Longevity Incentive," which is a percentage of Associate Volume in excess of $3,000. Eligibility for the full amount of many of these bonuses and incentives is contingent upon many terms and conditions, including the Associate's continuous employment under the Agreement throughout the Tax Season.]

\* \* \*

5(e). [Forfeiture] Should Associate be terminated for cause (as defined in Section 8 below) during the term of this Agreement or should Associate resign while under investigation for conduct that could result in termination for cause or upon being confronted with charges of such conduct, Associate shall not be entitled to receive any incentive compensation under this Section 5 and Associate's earnings shall be limited to the draw amount paid to Associate under Section 4 during the period of employment.

\* \* \*

8. Termination. The Company may discharge Associate and terminate this Agreement without notice if Associate violates any terms or conditions of this Agreement, makes any misrepresentations hereunder or if Associate's services for any reason are deemed unsatisfactory by the Company.

summary judgment on her claims of breach of contract, violation of the Pennsylvania Wage Payment and Collection Law, the tort of wrongful firing, and loss of consortium. *Id.* at 4–5. Thus, we begin our analysis by reviewing whether the trial court erred in concluding that the Agreement is not unconscionable. Trial Court Opinion, 6/30/2012, at 7.

■ "A determination of unconscionability requires a two-fold determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions." *McNulty v. H & R Block, Inc.,* 843 A.2d 1267, 1273 (Pa.Super.2004). Appellant bears the burden of establishing the contract is unconscionable. *Salley v. Option One Mortgage Corp.,* 592 Pa. 323, 925 A.2d 115, 129 (2007).

In support of her unconscionability argument, Appellant contends that she had no meaningful choice but to sign the Agreement as a condition of her employment. Appellant's Brief at 20–21. She further argues that the Agreement was presented *"en masse,* so that there was no one with whom she could have discussed the terms" and that H & R Block "would not have negotiated with any given preparers over the terms and conditions of employment, other than the hours of employment." *Id.* at 25.

The trial court rejected Appellant's argument, reasoning as follows.

[t]here is no testimony that [Appellant] even attempted to discuss the terms of the contract. [Appellant] had to reapply for work and sign the employment agreement each year she worked with H & R Block. She could have chosen to apply elsewhere when faced with the terms of the agreement. The fact that [Appellant] obtained alternate employment within four days of her employ-

ment being terminated at H & R Block demonstrates that other meaningful choices existed.

Trial Court Opinion, 6/30/2012, at 7 (citations omitted). We agree.

We are hard pressed to find unconscionable a contract that Appellant had signed willingly 17 times prior to the 2002 tax season. Moreover, we note that Appellant was able to find employment immediately following her departure from H & R Block. Accordingly, we decline to disturb the trial court's determination on appeal.

■ We turn now to Appellant's claims that she set forth four viable causes of action, any of which creates a genuine issue of material fact that would have precluded the entry of summary judgment. Appellant's Brief at 4. As noted above, each of Appellant's alternative arguments is premised upon a finding that the Agreement was unconscionable; and, therefore, unenforceable. However, as fully set forth below, because we have rejected Appellant's assertion that the Agreement was unconscionable, her other arguments must fail.

■ First, Appellant alleges that she raised a viable claim for breach of contract. The trial court addressed Appellant's claim as follows:

Under Pennsylvania law, an employee is ordinarily considered to be hired at-will, and there is generally no common law cause of action against an employer for termination of an at-will relationship. An exception to this rule can arise when a formal written contract of employment specifies a definite period for which the employee will be employed. An employment contract of definite duration cannot be legally terminated by an employer prior to its expiration date absent just cause.

Initially, the [trial court] notes that [Appellant] did sign an employment contract that provided for a specific term of employment.... [Appellant's] term of employment was December 4, 2001 to April 15, 2002. Because she was employed under a contract for a definite period, she was not an at-will employee and could not be legally terminated prior to the expiration of that period absent just cause.

Since [Appellant] was terminated prior to April 15, 2002, the Court must consider whether the firing was for cause.

\*     \*     \*

H & R Block argues that it complied with section 8 of the Agreement and denies firing [Appellant] to avoid paying her overtime and additional compensation. H & R Block asserts that [Appellant] was terminated because of her excessive and unauthorized overtime, her possession of confidential client information outside of the office, her refusal to uniformly offer IRA's to certain clients, and her negative attitude. Such conduct is in violation of clearly stated terms and policies in the Agreement, the Addendum, and the Handbook. Evidence presented by H & R Block, including hearing testimony, deposition testimony, and letters from H & R Block's regional human resources manager and district manager to [Appellant], supports the claim that her employment was terminated for cause. Furthermore, [Appellant] admits having committed many of the violations of company policy that allegedly led to her dismissal. In attempting to· support her claim that H & R Block fired her to avoid paying her additional compensation, [Appellant] only raises the timing of the termination. As stated above, in response to a motion for summary judg-

ment, a non-moving party must adduce sufficient evidence on an issue on which she bears the burden of proof such that a jury could return a verdict in her favor. [Appellant] has not done so, and, as a result, her breach of contract claim fails.

Trial Court Opinion, 6/30/2012, at 6–7 (citations omitted).

We agree with the trial court's analysis. Additionally, Appellant's argument fails to consider that the Agreement does not guarantee additional compensation, but merely provides for additional compensation if various terms and conditions are met. *See* Agreement Paragraph 5. As discussed above, Appellant failed to provide evidence that she met the conditions required to be eligible for additional compensation. Thus, her claim that H & R Block breached its contract in this regard must fail.

Additionally, we note that regardless of whether the Agreement is unconscionable, Appellant is not entitled to relief. If the Agreement were unenforceable, Appellant would have been an at-will employee of H & R Block and, as such, would have been subject to firing for any reason, including those reasons listed above. *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 539 A.2d 865 (1988) (generally, in the absence of a formal written contract of employment which specifies a definite period of employment, an employee is considered hired at-will).

Furthermore, we are not persuaded by Appellant's claim that the trial court erred in finding that H & R Block did not act in bad faith. In support of her argument, Appellant improperly equates the equitable doctrine of unclean hands with the legal defense of bad faith. Although a panel of this Court previously determined that H & R Block acted with unclean

hands relative to the preliminary injunction it requested in this case, such conduct did not form the basis for Appellant's firing. *See H & R Block Eastern Tax Services, Inc., v. Zarilla,* 894 A.2d 827 (Pa.Super.2005) (unpublished memorandum). Appellant has failed to demonstrate that H & R Block's decision to fire her was predicated on anything other than her aforementioned violations of the Agreement, the Addendum, and the Handbook. Accordingly, we find no basis to disturb the order granting summary judgment in favor of H & R Block with respect to Appellant's breach of contract claim.

■ Next, Appellant contends that she properly stated a cause of action under the Pennsylvania Wage Payment and Collection Law which would preclude the entry of summary judgment on behalf of H & R Block. Appellant's Brief at 30.

The relevant portion of the Pennsylvania Wage Payment and Collection Law states:

[w]henever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would be otherwise due and payable.

43 P.S. § 260.5. As the learned trial court explained

to be "earned," the right to a wage or bonus must have vested under the terms of employment. The employment contract governs whether wages or compensation are "earned" or vested within the meaning of the statute. On that question, the Agreement provides for payment of additional compensation "on or before the May 10th following the termination of this Agreement" and states in pertinent part that "Should Associate be terminated for cause (as defined in Section 8, below) during the term of the Agreement ..., Associate shall not be entitled to receive any incentive compensation under this Section 5[.]" [Appellant] was terminated on March 13, 2002, more than one month before the earliest date for payment of additional compensation. As a result, the right to additional compensation never vested, and, consequently, such compensation was not earned. [Appellant] argues that, because the Agreement is unconscionable, the provisions of the Agreement addressing additional compensation are invalid. Because the Court already concluded that the Agreement is not unconscionable, this argument is not persuasive. Accordingly, [Appellant] has failed to demonstrate that a violation of the Wage Payment and Collection Law occurred.

Trial Court Opinion, 6/30/2012, at 8–9 (quotations and citations omitted).

We agree with the reasoning of the trial court. Additionally, in the absence of evidence to the contrary, it appears that the additional compensation outlined in the Agreement is available only to individuals employed under the Agreement. Again, we note that if the Agreement were unenforceable, Appellant would not be entitled to relief. Thus, we find no basis upon which to reverse the decision of the trial court.

■ Building on her previous claims, Appellant next alleges that she presented a viable cause of action for the tort of wrongful discharge, and accordingly, the trial court's grant of summary judgment was in error. Appellant's Brief at 31. It is well-settled that the tort of wrongful discharge is available only where there is an employment-at-will relationship. *Weaver v. Harpster,* 601 Pa. 488, 975 A.2d 555, 557 n. 3 (2009). As discussed above, because Appellant was employed for a def-

inite time under the Agreement, she was not an employee-at-will and her claims must fail on this basis. *See Schecter v. Watkins,* 395 Pa.Super. 363, 577 A.2d 585, 589 (1990).

Even if Appellant were an at-will employee of H & R Block, she is not entitled to relief. We have held that an at-will employee may be terminated at any time for any reason or no reason. However, "if the termination of an employee violates a clear mandate of public policy, or is done with the specific intent to harm the employee, a cause of action will lie." *Booth v. McDonnell Douglas Truck Services, Inc.,* 401 Pa.Super. 234, 585 A.2d 24, 28 (1991). Instantly, Appellant maintains that her employment was terminated because of H & R Block's determination to avoid paying her commissions, bonuses, and overtime. Even if true, there is no public policy violation at play such that the exception noted in *Booth* could be found. Accordingly, we decline to reverse the trial court's grant of summary judgment.

Finally, Appellant argues that she, through her husband, stated a cause of action for loss of consortium. Appellant's Brief at 36. The trial court rejected Appellant's argument noting that "[a] loss of consortium claim is dependent upon the injured spouse's right to recover. Because [the trial court] has concluded that [Appellant] is not able to recover on her claims, she cannot state a claim for loss of consortium." Trial Court Opinion, 6/30/2012, at 9. Based on the above, we find no basis to disturb the trial court's grant of summary judgment in favor of H & R Block.

Order affirmed.