J-A22019-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| PRECISION UNDERGROUND PIPE SERVICES, INC. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant, | : | |
| v. | : | |
| PENN NATIONAL MUTUAL CASUALTY AND VERIZON PENNSYLVANIA, LLC AND PARKSIDE UTILITY CONSTRUCTION, LLC AND POHLIG BUILDERS, INC., AND CHRISTOPHER HAMMELL AND CHRISTINE HAMMELL | : | |
| Appellees | : | No. 3663 EDA 2018 |

Appeal from the Order Entered December 3, 2018
In the Court of Common Pleas of Philadelphia
County Civil Division at No(s):  170902368

BEFORE:   MURRAY, J., STRASSBURGER, J.[*] and PELLEGRINI, J.[*]

MEMORANDUM BY STRASSBURGER, J.:        **FILED DECEMBER 03, 2019**

Precision Underground Pipe Services, Inc. (Precision) appeals from the order entered December 3, 2018, which denied Precision's motion for partial summary judgment and granted summary judgment in favor of Penn National Mutual Casualty (Penn National).  In that order, the trial court concluded that Penn National had no duty to defend or indemnify Verizon Pennsylvania, LLC (Verizon) and Parkside Utility Construction, LLC (Parkside)

_____

[*] Retired Senior Judge assigned to the Superior Court.

in an underlying civil action.[1]  After review, we reverse the order granting summary judgment and remand for further proceedings.

The trial court provided the relevant factual and procedural history of this matter.

> Verizon entered into a contract with Parkside (Verizon-Parkside Agreement) to install an underground conduit for Verizon's fiber optic cable in connection with a real estate development on the Ardrossan Farm Development in Radnor Township, Villanova, [Pennsylvania].  The Verizon-Parkside Agreement required Parkside to name Verizon as an additional insured on its policies of insurance and to provide a defense and indemnity to Verizon. On October 28, 2014, Parkside entered into a subcontract and hired Precision to provide necessary labor [(Parkside-Precision Agreement).]  The subcontract required Precision to name Parkside and Verizon as additional insureds on the Penn National Policy [(Policy)] under certain conditions. Pursuant to the subcontract, any insurance coverage provided to Parkside or Verizon under the Policy was to be primary and noncontributory with respect to any other insurance available to Parkside and/or Verizon. The Parkside-Precision Agreement also required Precision to "defend, indemnify, and hold harmless" Parkside and Verizon.
>
> Penn National issued to Precision a policy of commercial general liability insurance with an effective date of January 4, 2016 to January 4, 2017, and a policy limit of $1 million per occurrence and $2 million in the aggregate. Critically, the policy contains an "Automatic Additional Insureds- Owners, Contractors, and Subcontractors" endorsement which provides in part:
>
> **SECTION II- WHO IS AN INSURED**

---

[1] According to Precision, Pohlig Builders, Inc. (Pohlig), "Verizon, Parkside and [the Hammells] are named as defendants in the instant action only to the extent they may have an interest in Precision's claim against Penn National and may be considered indispensable parties for purposes of this declaratory judgment action."  Complaint, 9/20/2017, at ¶ 9.

1. Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured, but only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by:

(1) Your acts or omissions; or

(2) The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location or project described in the contract or agreement. A person's or organization's status as an additional insured under this agreement ends when your operations for that additional insured are completed.

On April 8, 2016, Christopher Hammell [(Hammell)], an employee of Precision, suffered injuries when he fell into a trench at a work site near Villanova, Pennsylvania. [The Hammells] filed an action against Parkside and Verizon, as well as other defendants in the Court of Common Pleas, Philadelphia.[1]

_____

[1] The action is captioned [**Hammell v. Pohlig Homes, LLC, et. al.**], CP Phila 1701-2119 [(**Hammell**).[2]] Precision

[2] "On August 13, 2018, a Suggestion of Death was filed for [] Hammell. On the same date, the Estate of Christopher Hammell was substituted for [] Hammell." Precision's Brief at 2, n.1. "After [the trial court's] order granting summary judgment to Penn National was issued, [Hammel's] wife filed a second amended complaint[,]" which "alleged that the pain from Hammell's fall caused him to become addicted to opioids and that this addiction resulted in an overdose and his death. In addition, the claims of negligence were expanded." **Id.** at 5, n.1.

is not an original party to this action; nor has Precision[3] been joined or named in any pleading.

The [A]mended [C]omplaint[4] in the underlying action alleges as follows:

> [7.] Verizon and Parkside "owned, operated, maintained, managed, supervised, possessed and/or controlled the premises at or near Villanova, [Pennsylvania]."
>
> [8.] At all times material hereto, "there was a dangerous and hazardous condition in the nature of a trench at the premises."
>
> [9.] At all times relevant hereto, Verizon and Parkside "had a common law duty and/or a contractual duty to protect workers at the premises."
>
> [10.] Verizon and Parkside had a duty to protect Precision's workers "from unreasonably dangerous conditions caused by its conduct and/or failure to act."
>
> [11.] At all times relevant hereto, Verizon and Parkside "acted and/or failed to act by and through their respective agents, servants, workmen and/or employees."

---

[3] "Precision was not named as a defendant in [**Hammell**], as Precision was Hammell's employer and immune from suit pursuant [to] the Pennsylvania Workers' Compensation Act." Action for Declaratory Judgment, 9/20/2017, at ¶ 17. **See** 77 Pa. Stat. Ann. § 481 ("The liability of an employer under th[e Workers' Compensation A]ct shall be exclusive and in place of any and all other liability[.]").

[4] According to Precision, the averments set forth in the Amended Complaint, which are pertinent to this appeal, "are identical to the averments in the initial complaint. The only significant differences are that additional defendants have been added to the [A]mended [C]omplaint and the paragraphing has been adjusted." Precision's Brief at 5, n.1.

[16.] On April 8, 2016, at approximately 1:30 p.m., Hammell was working as an employee for Precision at or near Villanova, Pa. when a trench gave way and/or he fell in a trench, causing him to sustain serious injuries.

[28 a-i and 30 a-i.] The aforesaid act was caused as a direct and proximate result of the carelessness and negligence of defendants Verizon and Parkside, by and through their agents, servants, workmen and/or employees and their negligence.

On February 21, 2017, Parkside, claiming to be one of Precision's named additional insureds, tendered demand that Penn National defend and indemnify Parkside. Parkside's tender was based on Precision's position, reflected in this declaratory judgment action, that both Parkside and Verizon are additional insureds under the [P]olicy issued to Precision. On April 7, 2017 and August 21, 2017, respectively, Penn National declined to provide additional insured coverage to Verizon and Parkside on grounds that the [A]mended [C]omplaint in [**Hammell**] does not allege that negligence by Precision caused [] Hammell's injury.

Trial Court's Memorandum Opinion, 2/8/2019, at 1-4 (citations omitted).

On September 20, 2017, Precision filed the instant action against, *inter alia*, Penn National, asserting it was entitled to declaratory judgment[5] and "damages for breach of contract for failing to provide a defense and indemnity to alleged additional insureds" *Id.* at 4. According to Penn National, the averments set forth in the underlying action did not trigger coverage under the Policy. Penn National's Answer and New Matter, 11/3/2017, at 4.

_____

[5] *See* 42 Pa.C.S. §§ 7531-41 (Declaratory Judgments Act).

- 5 -

Following discovery, Precision filed a motion for partial summary judgment. *See* Precision's Motion for Partial Summary Judgment, 6/1/2018.[6] On August 20, 2018, Penn National filed a cross-motion for summary judgment. On December 3, 2018, the trial court denied Precision's motion for partial summary judgment and granted Penn National's motion. Specifically, the trial court found that "[s]ince Precision is neither a named defendant nor otherwise implicated in [*Hammell*,] Penn National does not have a duty to defend Verizon and Parkside as additional insureds." Memorandum Opinion, 2/8/2019, at 8 (footnote omitted). Moreover, the trial court found that, because "there is no duty to defend, the remaining claim for breach of contract also fails. There is also no duty to indemnify." *Id.* at 8, n.8.

This timely-filed appeal followed.[7] Although presented as four distinct issues, Precision's claims on appeal are all interrelated. Thus, we shall address them together. In essence, Precision asserts the trial court erred in

_____

[6] Precision's motion for partial summary judgment is not included in the certified record before us. "While this Court generally may only consider facts that have been duly certified in the record, [] where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it." *Commonwealth v. Barnett*, 121 A.3d 534, 546 n.3 (Pa. Super. 2015). Here, the reproduced record contains Precision's motion and there is no dispute as to its contents. Therefore, we considered the document in our review.

[7] Both Precision and the trial court complied with Pa.R.A.P. 1925.

determining that Penn National was entitled to summary judgment because Penn National's "duty to defend was not triggered by the" Amended Complaint. Precision's Brief at 15. Specifically, Precision argues that, in determining that Penn National had no duty to defend, the trial court *inter alia*: (1) "read the [Amended C]omplaint too narrowly, ignoring the claim that Verizon and Parkside, for whom Precision was working as a subcontractor, failed to protect Hammell, Precision's employee, from dangerous conditions created by Precision[;]" and (2) "erred in distinguishing *Ramara Inc. v. Westfield Insurance Co.*, 814 F.3d 660 (3d Cir. 2017),[8] a case on all points with the instant action, including the same additional insured endorsement." Precision's Brief at 15. We begin with the relevant legal principles.

"In a declaratory judgment action, just as in civil actions generally, summary judgment may be granted only in those cases in which the record clearly shows that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." ***Certain***

_____

[8] "[T]he holdings of federal circuit courts bind neither this Court nor the trial court, but may serve as persuasive authority in resolving analogous cases." *Montagazzi v. Crisci*, 994 A.2d 626, 635, n.7 (Pa. Super. 2010). In *Ramara*, the Third Circuit Court of Appeals determined that the allegations in an underlying negligence complaint were enough to trigger an insurer's duty to defend an additional insured, despite the fact that the named insured was not a party in the underlying cause of action. *Ramara*, 814 F.3d at 677-80.

***Underwriters at Lloyds v. Hogan***, 852 A.2d 352, 354 (Pa. Super. 2004)

(citation and quotation marks omitted). When reviewing a challenge to an

order granting summary judgment, our standard of review is well settled. "A

reviewing court may disturb the order of the trial court only where it is

established that the court committed an error of law or abused its discretion.

As with all questions of law, our review is plenary." ***Krauss v. Trane U.S.***

***Inc.***, 104 A.3d 556, 562-63 (Pa. Super. 2014) (citations omitted).

> We view the record in the light most favorable to the non-
> moving party, and all doubts as to the existence of a genuine
> issue of material fact must be resolved against the moving party.
>
> * * *
>
> Motions for summary judgment necessarily and directly implicate
> the plaintiff's proof of the elements of [its] cause of action.
> Summary judgment is proper if, after the completion of
> discovery relevant to the motion, including the production of
> expert reports, an adverse party who will bear the burden of
> proof at trial has failed to produce evidence of facts essential to
> the cause of action or defense which in a jury trial would require
> the issues to be submitted to a jury. Thus, a record that
> supports summary judgment will either (1) show the material
> facts are undisputed or (2) contain insufficient evidence of facts
> to make out a *prima facie* cause of action or defense and,
> therefore, there is no issue to be submitted to the jury.

***H & R Block E. Tax Servs., Inc. v. Zarilla***, 69 A.3d 246, 248–49 (Pa.

Super. 2013) (citations omitted); ***see also*** Pa.R.Civ.P. 1035.2.

> An insurer's duty to defend an action against the insured is
> measured, in the first instance, by the allegations in the
> plaintiff's pleadings[.] This duty is distinct from and broader
> than an insurer's duty to provide indemnification. Provided the
> underlying allegations encompass an injury that is actually or
> potentially within the scope of the policy, an insurer must defend

- 8 -

its insured. This duty to defend persists until the claim is confined to a recovery that the policy does not cover.

* * *

In the context of a declaratory judgment action, the court resolves the question of coverage. By comparing the allegations to the insurance policy provisions, we determine whether, if the allegations are sustained, the insurer would be required to pay [a] resulting judgment[.]

The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint.[9]

***Kiely on Behalf of Feinstein v. Philadelphia Contributionship Ins. Co.***,

206 A.3d 1140, 1145–46 (Pa. Super. 2019) (citations, quotation marks and

emphasis in the original omitted).

In this case, the trial court concluded that,

after applying the four corners rule to the [A]mended [C]omplaint in ***Hammell*** and after liberally construing and accepting as true its factual allegations, we find that Verizon and Parkside are not entitled to coverage by [] Penn National. There is simply no suggestion in the Amended Complaint or any other pleading, that Precision can be blamed for an act or omission that caused [] Hammell's injuries. As defined in [the P]olicy, there are no additional insureds [] and therefore no duty to defend either Verizon or Parkside.

---

[9] Looking beyond the four corners of the complaint, such as considering extrinsic evidence, is prohibited and departs "from the well-established precedent … requiring that an insurer's duty to defend and indemnify be determined solely from the language of the complaint against the insured." ***Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 896 (Pa. 2006).

To trigger additional insured coverage under the [P]olicy, the [Amended C]omplaint needed to allege, at the very least, that [] Hammell's bodily injuries were caused, in whole or in part, by Precision, or by someone acting on Precision's behalf, such as an agent. The Amended Complaint only claims Parkside and Verizon had a duty to protect [] Hammell because he was an employee of an unnamed company which may have somehow been responsible for dangerous conditions. But in the underlying case, [] Hammell [] never names Precision specifically or alleges anything cognizable about Precision's conduct that might have been at fault. What [Precision] alleges in the underlying case is not enough, and Penn [National's] duty to defend or indemnify is not activated. … Precision relies on language at Paragraph [10] of the Amended Complaint. In pertinent part, Paragraph 10 reads as follows:

> "...defendants...had a duty to protect workers of Precision [] from unreasonably dangerous conditions caused by *its* conduct and/or failure to act."

(Italics added).

Precision relies on the pronoun "its" to expose Precision to potential liability for [] Hammell's injuries. While Paragraph 10 lays on "defendants[," which include Parkside and Verizon,] a duty to protect workers like Hammell from dangerous conditions caused by Precision, palpably missing is any allegation that Precision actually caused such dangerous conditions in the first place. Moreover, Precision cannot be one of the "defendants" described in Paragraph 10 as Precision is not a defendant party in **Hammell**.

* * *

Since Precision is neither a named defendant nor otherwise implicated in **Hammell** [], Penn National does not have a duty to defend Verizon and Parkside as additional insureds.[11]

_____
[11] Since th[e trial] court finds that there is no duty to defend, the remaining claim for breach of contract also fails. There is also no duty to indemnify.

Trial Court Memorandum Opinion, 2/8/2019, at 6-8 (some citations and footnotes omitted).[10]  Upon review, we conclude that such a narrow reading of the Amended Complaint by the trial court constitutes reversible error.

> An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. **See** [] ***Springfield Tp. et al. v. Indemnity Ins. Co. of North America***, [64 A.2d 761 (Pa. 1949)] ("It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend."). In making this determination, the factual allegations of the underlying complaint against the insured are to be taken as true and liberally construed in favor of the insured. Indeed, the duty to defend is not limited to meritorious actions; it even extends to

---

[10] Additionally, the trial court found that the two cases cited by Precision, ***Ramara*** and ***Zurich American Ins. Co. v. Indian Harbor Insurance Company***, 235 F.Supp. 699 (ED.Pa. 2017), were distinguishable from the instant matter.  **See** Trial Court Memorandum Opinion, 2/8/2019, at at 7 (finding that, in ***Ramara***, the underlying complaint "specifically alleges that the injured worker's employer was an independent contractor who through its agents, 'failed to adequately inspect and monitor the work performed.' Agency[,] coupled with specific factual allegation[s,] were enough for the ***Ramara*** Court to find a duty to defend. In contrast, in his underlying Amended Complaint, [] Hammell did not aver agency nor did he allege specific conduct or omission by Precision that allegedly contributed to his injuries.").  **See also id.** at 8 (finding that, unlike the instant matter, "the underlying complaint in ***Zurich American*** contains allegations that could be construed to implicate liability of a property owner who had contracted for window washing services with plaintiff's employer, LWC City, Inc." … In contrast, [] Hammell's Amended Complaint does not allege any agency whatsoever between Precision and Parkside (the developer) and makes no cognizable factual claim that Precision acted as an agent of Verizon. The relevant averment ambiguously states that Parkside and Verizon "at all times acted and/or failed to act by and through their respective agents, servants, workmen and/or employees." Unlike the averments against Rittenhouse in ***Zurich America***, there are none in the Hammell Amended Complaint that lays out negligence by Precision or its agents.").

actions that are "groundless, false, or fraudulent" as long as there exists the possibility that the allegations implicate coverage.

***Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.***, 2 A.3d 526, 541 (Pa. 2010) (some citations and quotation marks omitted). Thus, "[a]s long as the complaint 'might or might not' fall within the policy's coverage, the insurance company is obliged to defend. Accordingly, it is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend." ***Id.*** (citations omitted).

Here, the central issue to be resolved is whether the Amended Complaint alleged sufficiently that Hammell's injuries were "caused, in whole, or in part" by Precision's acts or omissions or by the acts or omissions of someone acting on Precision's behalf. If it did, the additional insured coverage is triggered and Penn National has a duty to defend Parkside and Verizon. If the Amended Complaint failed to establish the foregoing, Penn National would have no obligation to defend these additional insureds. To make this determination, we compare the scope of coverage set forth in the Policy to the allegations in the Amended Complaint.

As set forth *supra*, the Policy covers additional insureds with respect to liability for, *inter alia*, bodily injury, which is caused "in whole or in part" by Precision's "acts or omissions" or the "acts or omissions of those acting on" Precision's behalf "in the performance of [Precision's] ongoing operations for the additional insured(s) at the location or project described in the contract

or agreement." Complaint, 9/20/2017, at Exhibit C. In his Amended Complaint, Hammell averred, in relevant part, that Verizon and Parkside "owned, operated, maintained, managed, supervised, possessed and/or controlled [] premises at or near Villanova, [Pennsylvania.]" Amended Complaint, 2/7/2018 at ¶ 7. Hammell further stated that, during the relevant period of time there was "a dangerous and hazardous condition in the nature of a trench at the premises" and that Parkside and Verizon had a "contractual duty to protect workers at the premises." *Id.* at ¶¶ 8-9. Hammell claimed he was injured while working for Precision "at or near Villanova, [Pennsylvania,] when a trench gave way and/or he fell in the trench, causing him to sustain serious injuries." *Id.* at ¶ 16. Most notably, Hammell asserted that Parkside and Verizon had a duty to protect employees of Precision, like Hammell, "from unreasonably dangerous conditions caused by **its** conduct and/or failure to act." *Id.* at ¶ 10 (emphasis added).

Reviewing the Policy in conjunction with the Amended Complaint, we find Hammell's allegation that Verizon and Parkside had a duty to protect Precision's workers from unreasonably dangerous conditions caused by Precision's "conduct and/or failure to act" sufficient to trigger Penn National's duty to defend Verizon and Parkside as additional insureds. In doing so, we find, unlike the trial court, the fact that Hammell did not make any overt allegations of negligence or wrongdoing against Precision, Hammell's

employer, does not foreclose Penn National's duty to defend. Put simply, we find the Amended Complaint set forth allegations of the existence of unreasonably dangerous conditions, *see* Amended Complaint, 2/7/2018, at ¶ 8 ("At all times material hereto, there was a dangerous and hazardous condition in the nature of a trench at the premises"), and that Verizon and Parkside had duty to protect Hammell from unreasonably dangerous conditions caused by **Precision's** "conduct and/or failure to act." *Id.* at ¶ 10. In construing the Amended Complaint liberally, and in favor of the insured, we find the allegations adequate to establish Penn National's duty to defend. *See Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. 1992) ("[T]he factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured.").

Accordingly, we conclude that the Amended Complaint set forth sufficient averments which triggered Penn National's duty to defend its third-party insureds, Parkside and Verizon. Thus, we find that the trial court erred in granting Penn National's motion for summary judgment.

Order granting summary judgment reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/3/19