**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1822
_____

MID-CENTURY INSURANCE COMPANY

v.

CHAD WERLEY; JANE WERLEY, INDIVIDUALLY AND
AS PARENTS AND NATURAL GUARDIANS OF LEVI
WERLEY

CHAD WERLEY; JANE WERLEY, INDIVIDUALLY AND
AS PARENTS AND NATURAL GUARDIANS OF LEVI
WERLEY

v.

MID-CENTURY INSURANCE COMPANY

MID-CENTURY INSURANCE COMPANY,
                                    Appellant

_____

On Appeal from the United States District Court for the
Eastern District of Pennsylvania
(District Court No. 5-21-cv-05592)

District Judge: Honorable Edward G. Smith

_____

Argued May 2, 2024
_____

Before: KRAUSE, CHUNG, and RENDELL, *Circuit Judges*.

(Filed: September 5, 2024)

Candace N. Edgar [ARGUED]
Marshall Dennehey Warner Coleman & Goggin
200 Corporate Center Drive
Suite 300
Camp Hill, PA 17011

*Counsel for Appellant*

Peter F. Schuchman, Jr. [ARGUED]
Kozloff Stoudt
2640 Westview Drive
Wyomissing, PA 19610

*Counsel for Appellees*

————————————

OPINION OF THE COURT

————————————


**RENDELL**, *Circuit Judge*.

Levi Werley was seriously injured while riding an uninsured motorized dirt bike. When the insurance of the driver that struck him did not compensate him fully for his injuries, Levi's parents, Chad and Jane Werley, sought to recover underinsured motorist ("UIM") benefits under their own automobile insurance policies. The Werleys' insurer, Mid-Century Insurance Company ("Mid-Century"), paid out $250,000 under one policy. But the Werleys maintain that they are entitled to an additional $250,000 under another household policy. In their view, that policy's household vehicle exclusion, which bars payments for bodily injury sustained while occupying an uninsured vehicle, is invalid and unenforceable.

The District Court agreed with the Werleys that the coverage exclusion in the at-issue policy was invalid under Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701 *et seq.* (the "MVFRL"), and thus the Werleys were entitled to the additional UIM benefits sought. Because Pennsylvania Supreme Court precedents lead us to a different conclusion, we will vacate the District Court's order and remand with instructions to enter judgment in favor of Mid-Century.

3

I

A

We begin with an overview of the MVFRL and the sections of that statute relevant to this appeal.

The MVFRL is comprehensive legislation that "impose[s] mandatory obligations applicable to all automobile insurance providers" in Pennsylvania. *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1124 (Pa. 2019). The MVFRL thus governs the provision of UIM coverage. UIM coverage offers benefits "when a third-party tortfeaser [sic] injures or damages an insured and the tortfeasor lacks sufficient insurance coverage to compensate the insured in full." *Gallagher v. GEICO Indem. Co.*, 201 A.3d 131, 132 n.1 (Pa. 2019).

As relevant here, § 1731 of the MVFRL mandates that insurers offer UIM coverage to their insureds when delivering policies. 75 Pa. Cons. Stat. § 1731(a); *Rush v. Erie Ins. Exch.*, 308 A.3d 780, 790 (Pa. 2024). But, mindful of cost-containment concerns underlying the MVFRL, the General Assembly made the purchase of UIM coverage optional if the insured rejects coverage by signing a statutorily prescribed form. 75 Pa. Cons. Stat. § 1731(a), (c); *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 150–51 (Pa. 2002).

The MVFRL has a priority scheme for insurance payment when multiple insurance policies apply to the same accident. 75 Pa. Cons. Stat. § 1733. The first-priority policy, or host-vehicle policy, is a "policy covering a motor vehicle occupied by the injured person at the time of the accident." *Id.* § 1733(a)(1). If the host-vehicle policy does not provide benefits sufficient to

4

compensate the injured insured, or if no host-vehicle policy exists, a "policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured" will pay; this is a second-priority policy. *Id.* § 1733(a)(2).

The MVFRL also codifies a default rule of "stacking" for UIM coverage. *Id.* § 1738. Stacking is "the practice of combining the insurance coverage of individual vehicles to increase the amount of total coverage available to an insured." *Gallagher*, 201 A.3d at 132 n.1. Stacking comes in two varieties: Intra-policy stacking aggregates the coverage limits on multiple vehicles covered under a single policy, even though not all the vehicles are involved in the accident or occurrence. *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 533 (Pa. 2006). Inter-policy stacking aggregates coverage limits for vehicles insured under separate policies. *Id.*

An insured can, however, waive stacked UIM coverage. 75 Pa. Cons. Stat. § 1738(b); *Rush*, 308 A.3d at 798. Named insureds may elect to waive stacked limits of coverage in exchange for a reduced premium by signing a written waiver form, the text of which is dictated by the MVFRL. 75 Pa. Cons. Stat. § 1738(d). Section 1738 contemplates allowing insureds to waive both inter-policy and intra-policy stacking. *Craley*, 895 A.2d at 540. But the Pennsylvania Supreme Court in *Craley v. State Farm Fire & Casualty Co.* observed that the statutorily prescribed waiver form is phrased only in terms of waiving *intra-policy* stacking, involving multiple vehicles on a single policy, rather than *inter-policy* stacking, involving stacking of multiple policies. *Id.* at 541. Despite this issue of drafting in the mandated waiver form, the General Assembly requires insurers to use the form because "[a]ny rejection form that does not comply with this section is void." 75 Pa. Cons. Stat. § 1738(e).

5

Nevertheless, the *Craley* Court acknowledged that the stacking waiver language was enforceable as a knowing waiver of *inter-policy* stacking in the circumstance where a policy covers only one vehicle. *Craley*, 895 A.2d at 542.[1]

With that statutory background established, we turn to the facts presented by this appeal.

B

In 2019, Levi Werley, then aged 15 and without a driver's license, was riding his family's uninsured Yamaha YZ85 dirt bike off road with several friends on private property in Kempton, Pennsylvania. Another 15-year-old struck Levi on his dirt bike while she was driving a Jeep CJ-7, resulting in severe injuries to Levi.

The driver of the Jeep had an insurance policy that paid out its bodily injury limit of $100,000 to Levi. Because the $100,000 paid by the driver's insurance policy was insufficient to cover Levi's damages, the Werleys sought UIM coverage under their own household automobile insurance policies.

The Werleys had two automobile policies in their household, both underwritten by Mid-Century. The first (the "Multi-Vehicle Policy"), listed Levi's parents, Chad and Jane,

---

[1] The *Craley* Court reasoned that an insured in the single-vehicle policy scenario "could not have thought he was receiving a reduced premium for waiving intra-policy stacking because there could be no intra-policy stacking with only one vehicle in the policy." *Craley*, 895 A.2d at 542 (internal quotation marks omitted).

as named insureds and insured four vehicles.[2] The Multi Vehicle Policy provided UIM coverage equal to the bodily injury limits of $250,000 per person and $500,000 per accident, with intra-policy stacking validly rejected. However, the Werleys could not waive inter-policy stacking because the Multi-Vehicle Policy insured multiple vehicles.[3] The Multi-Vehicle Policy contained a household vehicle exclusion of UIM coverage for "bodily injury sustained by you or any family member while occupying or when struck by any *motor vehicle* owned by you or any family member which is not insured for this coverage under any similar form." Appendix ("App.") 88 (bolded emphasis removed, italicized emphasis added). While the Multi-Vehicle Policy did not define the term "motor vehicle," Pennsylvania's Vehicle Code defines a "motor vehicle" as "[a] vehicle which is self-propelled except an electric personal assistive mobility device or a vehicle which is propelled solely by human power."[4] 75 Pa. Cons. Stat. § 102. Thus, Levi's injuries would not normally be covered due to this exclusion.

---

[2] The parties do not dispute that Levi qualified as a resident relative under the Multi-Vehicle Policy. *See* Appellees' Br. at 6.

[3] *See Donovan v. State Farm Mut. Auto. Ins. Co*., 256 A.3d 1145, 1157 (Pa. 2021) (noting that the language of the § 1738(d) stacking waiver "does not provide the necessary knowing waiver of inter-policy stacked coverage, absent the single-vehicle situation in *Craley*").

[4] The parties do not dispute that the dirt bike meets this definition.

The second Werley household automobile insurance policy (the "Jeep Policy") at the time of the accident listed Chad Werley and Levi's sister as named insureds. The Jeep Policy insured one vehicle, a Jeep, and provided $250,000 per person and $500,000 per accident in UIM coverage. Like the Multi-Vehicle Policy, the Jeep Policy contained a household vehicle exclusion for UIM coverage, but the language was not identical. The Jeep Policy's household vehicle exclusion excluded UIM coverage for "bodily injury sustained by you or any family member while occupying or when struck by any *car* owned by you or any family member which is not insured for this coverage under this policy under any similar form." App. 20; 175 (bolded emphasis removed, italicized emphasis added). The Jeep Policy defined "car" as

> [a] four-wheeled private passenger car of the coupe, sedan, station wagon, pick-up truck, van or sport utility type, with gross vehicle weight of 14,000 pounds or less, and licensed for and used only upon public highways. It does not include a motorhome, a step van, parcel delivery van, cargo cutaway van, or other van with the cab separate from the cargo area.

App. 168. Thus, Mid-Century determined that the Jeep Policy's household vehicle exclusion did not exclude coverage for Levi's injuries because the dirt bike was not a "car" as defined in the Jeep Policy.

8

The dirt bike Levi rode at the time of his accident was not a listed vehicle under any Werley family automobile insurance policy. The Werleys never paid any premiums to Mid-Century attributable to coverage for the dirt bike. The dirt bike lacked headlights, brake lights, parking lights, turn signals, and street tires, so it could not legally be operated on public roadways in Pennsylvania. Because insurance was not mandated for off-road vehicles, the Werleys were unaware that they had the option to insure the dirt bike. Chad and Jane did not inquire or research whether any insurance could be obtained for the dirt bike.

Mid-Century tendered the $250,000 limit under the Jeep Policy to Levi for the injuries he sustained in the dirt bike accident.[5] But Mid-Century denied the UIM claim under the Multi-Vehicle Policy based on the household vehicle exclusion contained in that policy.

C

Mid-Century filed a complaint against Chad and Jane, individually and as the parents of Levi, then a minor. The complaint asserted a single claim under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, seeking a declaration that

---

[5] This case presents a particularly unusual fact pattern because Mid-Century presumably paid not because the dirt bike was covered by the Jeep Policy, but because Levi was a resident relative of the named insureds and the exclusion for accidents involving a "car" other than the Jeep did not apply to the dirt bike. We need not determine whether Mid-Century was correct that it was obligated to pay under the Jeep Policy.

9

Mid-Century has no duty to provide UIM coverage to the Werleys under the Multi-Vehicle Policy.

The Werleys filed a motion to dismiss for failure to state a claim, which the District Court denied without prejudice. The Werleys then filed an answer and counterclaim against Mid-Century. In the counterclaim, the Werleys sought their own declaratory judgment that UIM coverage is available to them under the Multi-Vehicle Policy.

The Werleys and Mid-Century filed cross-motions for summary judgment. The District Court granted the Werleys' motion, denied Mid-Century's motion, and entered a declaration that Mid-Century had the duty to provide UIM coverage under the Multi-Vehicle Policy. *Mid-Century Ins. Co. v. Werley*, 666 F. Supp. 3d 463, 467 (E.D. Pa. 2023). The District Court concluded that Levi was entitled to stacked coverage, notwithstanding the uninsured status of the dirt bike Levi occupied at the time of the accident. *Id.* at 492. Although the District Court acknowledged the "seemingly abundant support for Mid-Century's position" in the applicable caselaw, the District Court drew a distinction by noting that unlike other insureds, the Werleys had not known they could insure their dirt bike and therefore failed to insure it or subsequently validly waive UIM coverage. *Id.* at 494–95. The opinion also relied heavily on the fact that Mid-Century had already paid UIM benefits to the Werleys under the Jeep Policy, thus providing a base upon which the Multi-Vehicle Policy's UIM benefits could stack. *Id.* at 495. And the District Court noted that § 1738 of the MVFRL—the section of the statute dictating the default of stacking UIM coverage—was silent as to whether an insured could only collect stacked coverage when the vehicle involved in the accident was itself insured for UIM

10

coverage; thus, it reasoned that in the Werleys' circumstances, the UIM benefits "follow[ed] the insured and not the vehicle." *Id.* at 497–98. Putting these conclusions together, the District Court determined that the Multi-Vehicle Policy's household vehicle exclusion, if enforced, would impermissibly operate as a *de facto* waiver of stacking. *Id.* at 499–500.

Mid-Century timely appealed.

## II[6]

"We exercise plenary review over an order resolving cross-motions for summary judgment," *Tristani ex rel. Karnes v. Richman*, 652 F.3d 360, 366 (3d Cir. 2011) (citing *Cantor v. Perelman*, 414 F.3d 430, 435 n.2 (3d Cir. 2005)), applying "the same standards and presumptions as the District Court." *Sapa Extrusions, Inc. v. Liberty Mut. Ins. Co.*, 939 F.3d 243, 249 (3d Cir. 2019) (citing *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 557 (3d Cir. 2008)).

## III

When sitting in diversity, "we must apply the substantive law as decided by the state's highest court." *Travelers Indem. Co. of Ill. v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (citing *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1373, 1373 n.15 (3d Cir. 1996)). Where the Pennsylvania Supreme Court has not directly addressed the issue before us, it is our role to predict how that Court would resolve the issue. *Id*. We are persuaded that, if presented with the same facts, the

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291.

Pennsylvania Supreme Court would hold that the household vehicle exclusion at issue here is valid and that is does not function as an impermissible *de facto* waiver of stacking. We therefore must vacate the District Court's order.

A

First, we must reject an argument that the District Court found appealing, namely that the uninsured status of the dirt bike is irrelevant because the Werley family seeks to collect UIM benefits for Levi, who was undisputedly an insured under the Multi-Vehicle Policy. The District Court agreed with the Werleys on this point, concluding "the ability to stack follows the son and not the dirt bike." *Werley*, 666 F. Supp. 3d at 467. Although it did not expressly say so, the District Court presumably believed that somehow this rendered the household vehicle exclusion an invalid waiver of the stacked coverage that it concluded had attached to Levi. *Id.* at 492.

The same argument has been considered, and rejected, by the Pennsylvania Supreme Court. *Rush*, 308 A.3d at 799. That Court has not embraced "the notion that UIM coverage is universally portable and not susceptible to exclusions from coverage." *Id.* As the Court reasons, UIM benefits, unlike first party benefits, do not follow the insured person in all circumstances, as suggested by the manner in which § 1733 lists priorities of recovery, specifically prioritizing recovery under a host-vehicle policy. *Id.* at 800. And "[i]f the MVFRL does not require that UIM coverage follow the insured in all circumstances, then the MVFRL cannot be read to prohibit exclusions from UIM coverage." *Id.* at 801.

12

Absent a statutory prohibition, then, exclusions limiting the scope of UIM coverage, like the Multi-Vehicle Policy's household vehicle exclusion, are generally enforceable. Mid-Century thus has no obligation to provide Levi UIM benefits in every circumstance, regardless of what vehicle he was operating, or how he was operating it, unless the exclusion functions as an impermissible *de facto* waiver of inter-policy stacking. We address that issue below.

B

1

The Werleys next contend that the household vehicle exclusion of the Multi-Vehicle Policy is invalid specifically as applied to the facts of this case. They rely on two cases in which the Pennsylvania Supreme Court held that applying household vehicle exclusions would operate as impermissible waivers of stacking. *See Gallagher v. GEICO Indemnification Co.*, 201 A.3d 131 (Pa. 2019); *Donovan v. State Farm Mut. Auto. Ins. Co.*, 256 A.3d 1145 (Pa. 2021). However, the Pennsylvania Supreme Court has admonished "that the holding in *Gallagher* was based upon the unique facts before [it] in that case, and that the decision there should be construed narrowly." *Erie Ins. Exch. v. Mione*, 289 A.3d 524, 530 (Pa. 2023).[7] The only issue before us is whether the principle adopted in those cases applies to the facts

---

[7] Because the *Donovan* Court concluded that the "logic of the case [was] indistinguishable from that in *Gallagher*," *Donovan*, 256 A.3d at 1160, we predict that the Pennsylvania Supreme Court would determine that *Donovan* should also be narrowly construed.

13

of this case—which are clearly distinguishable. We conclude that it does not.

In both *Gallagher* and *Donovan*, the insureds elected and paid premiums for UIM coverage on their motorcycle policies. *Gallagher,* 201 A.3d at 132–33; *Donovan*, 256 A.3d at 1147. Both insureds were injured while riding their motorcycles and received UIM benefits under their motorcycle policies; however, the insurers in both cases denied inter-policy stacked coverage under the household automobile policies based on the household vehicle exclusions contained therein. *Gallagher*, 201 A.3d at 132–33; *Donovan*, 256 A.3d at 1147–49.

The *Gallagher* and *Donovan* Courts held that those exclusions acted as *de facto* stacking waivers, in violation of 75 Pa. Cons. Stat. § 1738, which, as discussed above, provides that stacked UIM coverage is the default coverage available to all insureds and prescribes the specific form of waiver required to be signed by an insured who wishes to waive stacked coverage in exchange for a lower premium. *Gallagher*, 201 A.3d at 137–38; *Donovan*, 256 A.3d at 1160. The *Gallagher* Court underscored that the insured "decided to purchase stacked . . . UIM coverage under both of his policies [including the host-vehicle policy], and he paid . . . premiums commensurate with that decision." *Gallagher*, 201 A.3d at 138.

One crucial fact in this case makes it readily distinguishable from the facts in *Gallagher* and *Donovan*: the insureds there had elected and paid premiums on UIM coverage for the insured motorcycles (in *Gallagher*, the insured also paid for stacking). *Gallagher*, 201 A.3d at 132–33; *Donovan*, 256 A.3d at 1147–48. The Pennsylvania Supreme Court was focused on this fact. The Court reasoned that it would be unfair to allow

14

the household vehicle exclusions to deprive the insureds of the stacking for which they had paid and for which no valid *inter*-policy stacking waiver existed (in fact, the insured in *Gallagher* had paid for stacking). In stark contrast, here, the Werleys never paid associated premiums for any coverage of the dirt bike, let alone UIM coverage on it. Inter-policy stacking aggregates coverage limits available under at least two separate policies. *Craley*, 895 A.2d at 533. The dirt bike was never insured, and application of the household vehicle exclusion here deprived the Werleys of nothing for which they had bargained. As we noted above, the Pennsylvania Supreme Court has cautioned that *Gallagher* "should be construed narrowly." *Mione*, 289 A.3d at 530 (Pa. 2023). "It was only when confronted with th[e] unique facts [of that case] that [the Pennsylvania Supreme Court] concluded that enforcing the exclusion would be inconsistent with the unambiguous requirements [of] Section 1738 of the MVFRL" regarding the requirements for waiver of stacking. *Id.* (internal quotation marks omitted).

2

Mid-Century urges that two other Pennsylvania Supreme Court precedents, *Eichelman v. Nationwide Insurance Co.*, 711 A.2d 1006 (Pa. 1998), and *Erie Insurance Exchange v. Mione*, 289 A.3d 524 (Pa. 2023), are more relevant to our analysis here. We agree. Considering these cases, we are persuaded that the Pennsylvania Supreme Court would find the Multi-Vehicle Policy's household vehicle exclusion valid and enforceable.

In *Eichelman*, the injured insured had waived UIM coverage in his motorcycle policy. 711 A.2d at 1007. He was struck by an underinsured driver while occupying his

15

motorcycle, so the injured insured sought UIM coverage under his resident relatives' policies covering household automobiles, both issued by Nationwide. *Id.* Nationwide denied the injured insured's claim, citing the automobile policies' household vehicle exclusions. The exclusions provided that UIM coverage would not apply to "[b]odily injury suffered while occupying a motor vehicle owned by you or a relative not insured for [UIM] coverage under this policy; nor to bodily injury from being hit by any such motor vehicle." *Id.*

The *Eichelman* Court unanimously held that the household exclusions were enforceable notwithstanding the insured's election of stacking, concluding that

> [a] person who has voluntarily elected not to carry [UIM] coverage on his own vehicle is not entitled to recover [UIM] benefits from separate insurance policies issued to family members with whom he resides where clear and unambiguous "household exclusion" language explicitly precludes [UIM] coverage for bodily injury suffered while occupying a motor vehicle not insured for [UIM] coverage.

*Id.* at 1010. The *Eichelman* Court also noted that the cost-containment rationale underlying the MVFRL weighed in favor of enforcing the household vehicle exclusions. *Id.*

16

Similarly, in *Mione*, the insured waived UIM coverage on his motorcycle policy but paid for stacked UIM coverage on at least one of two other automobile policies. 289 A.3d at 525–26. The insured was injured on his motorcycle and attempted to recover UIM benefits under both the household automobile policies. *Id.* at 526. The insurer refused to pay out, citing the household exclusions contained in both automobile policies; the coverage did not apply to "damages sustained by anyone we protect while occupying or being struck by a motor vehicle owned or leased by you or a relative, but not insured for [UM/UIM] Coverage under this policy." *Id.* at 526, 526 n.4.

The *Mione* Court distinguished the facts before it from those in *Gallagher*, noting that the insured could not stack coverage, as he had waived UIM benefits under the host-vehicle policy and, instead, was seeking UIM benefits under the other household automobile policies "in the first instance." *Id.* at 529. The household vehicle exclusions in those automobile policies were held enforceable because they excluded coverage for injuries sustained when the insured was operating a motorcycle not insured for UIM coverage. *Id.* at 530. Citing practical concerns, the *Mione* Court feared that a broad conclusion that all household vehicle exclusions were unenforceable "would allow an entire family living in a single household . . . to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household." *Id.* at 527 (quoting *Eichelman*, 711 A.2d at 1010).

*Mione*'s holding controls the outcome of this appeal. There, the Supreme Court clearly stated that policies that "explicitly exclude . . . UIM coverage for damages sustained while operating an unlisted household vehicle . . . do not

17

conflict with Section 1738 of the MVFRL." *Id.* at 530. The *Mione* Court continued:

> when an insured seeks . . . UIM benefits under a household policy but does not have . . . UIM coverage on the vehicle that he or she was occupying at the time of the collision, it cannot be said that a household vehicle exclusion in the . . . UIM-containing policy is operating as a sort of disguised waiver of stacking that was disapproved in *Gallagher*. Rather in such circumstances, the household vehicle exclusion serves as an unambiguous preclusion of all . . . UIM coverage (even unstacked coverage) for damages sustained *while operating an unlisted household vehicle*.

*Id.* (emphasis added). Thus, when the host vehicle is uninsured, UIM coverage that may have existed under a second-priority policy can properly be excluded.

3

While these cases leave us with little doubt as to how we predict the Pennsylvania Supreme Court would decide this case, there are two factual distinctions that the Werleys seize upon. First, the Jeep Policy—that covered one vehicle and not the dirt bike—did pay out UIM coverage for Levi's accident.

The Werleys contend that once *any* policy pays UIM coverage for an accident, stacking is implicated for any other potentially relevant policy. This position is supported, they urge, by language in *Mione* that refers to policies that provide UIM coverage "in the first instance." *Mione*, 289 A.3d at 529. But the reason for invalidating the household vehicle exclusion in the stacked policy under *Gallagher* and *Donovan* is that it excludes the *very vehicle* that was involved in the accident and that had UIM coverage in the host-vehicle policy. Here, the Jeep Policy did not insure the dirt bike, so there is no reason to invalidate the exclusion in the Multi-Vehicle Policy. The "in the first instance" language does not help the Werleys' cause.

Second, the Werleys seek to distinguish their case from *Eichelman* and *Mione* by noting that the insureds in those cases had knowingly executed valid waivers under § 1731 for UIM insurance coverage on the motorcycles they were operating at the time of their injuries. *Eichelman*, 711 A.2d at 1007, 1007 n.2; *Mione*, 289 A.3d at 525, 525 n.1. By contrast, the Werleys argue that they had never purchased any insurance for the dirt bike, so they could never have validly waived UIM coverage on the dirt bike.

This argument strains logic. Section 1731 mandates that insurers issuing motor vehicle policies must offer UIM coverage in such policies, 75 Pa. Cons. Stat. § 1731(a), which insureds may reject using a statutorily prescribed form. *Id.* § 1731(c). The underlying condition precedent is that a vehicle owner have an insurance policy on the vehicle involved in the accident in the first place. Without that, there can be no duty on the part of the insurer to offer UIM coverage for the vehicle, and thus there can be no opportunity for the potential insured to sign a statutorily compliant waiver. This argument, if

19

accepted, would effectively place a burden on all insurers to affirmatively offer UIM coverage to motor vehicle operators who never sought insurance at all.

If anything, the distinction the Werleys note between themselves and the insureds in *Eichelman* and *Mione* highlights the unreasonableness of their expectations of UIM benefit recovery. In those cases, the Pennsylvania Supreme Court noted that the insureds had chosen not to purchase UIM coverage on their vehicles, had therefore received reduced insurance premiums, and reasonably should have had correlative reductions in expectations of coverage. *Mione*, 289 A.3d at 527 (quoting *Eichelman*, 711 A.2d at 1010). The Werleys, who never even inquired as to whether the dirt bike might be insured, let alone paid premiums on the dirt bike, had no reasonable expectations of coverage at all.

\* \* \*

Thus, we predict that the Pennsylvania Supreme Court would conclude that the collective logic of *Gallagher*, *Donovan*, *Eichelman*, and *Mione* is that a household vehicle exclusion is only invalid if (1) a policy insures the vehicle involved in the accident, (2) that policy provides UIM coverage on that vehicle, and (3) the household vehicle exclusion of a second policy sought to stack on top of the first policy would exclude UIM coverage for that vehicle. As the Court in *Mione* noted,

> when an insured . . . does not have . . . UIM coverage on the vehicle that he or she was occupying at the time of the

20

collision, it cannot be said that a household vehicle exclusion in the . . . UIM-containing policy is operating as a sort of disguised waiver of stacking that was disapproved in *Gallagher*.

*Mione*, 289 A.3d at 530. Since the first condition is not satisfied here, the household vehicle exclusion of the Multi-Vehicle Policy is valid and enforceable.

C

Finally, our conclusion that the household vehicle exclusion is valid comports with principles underlying our interpretation of insurance contracts and the purposes of the MVFRL.

When interpreting insurance contracts, "[t]he proper focus regarding issues of coverage . . . is the reasonable expectation of the insured." *Frain v. Keystone Ins. Co.*, 640 A.2d 1352, 1354 (Pa. 1994) (citing *Dibble v. Sec. of Am. Life Ins. Co.*, 590 A.2d 352, 354 (Pa. Super. 1991); *Dorohovich v. W. Am. Ins. Co.*, 589 A.2d 252 (1991)). To determine those expectations, we consider "the totality of the insurance transaction." *Id.* "In most cases, the language of the insurance policy will provide the best indication of the content of the parties' reasonable expectations." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 344 (3d Cir. 2005) (quoting *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 903 (3d Cir. 1997)).

The District Court concluded that the Multi-Vehicle Policy's household vehicle exclusion was unambiguous, *Werley*,

21

666 F. Supp. 3d at 491, and the parties do not dispute that point. The exclusion clearly prohibited recovery of UIM benefits if the insured was occupying a motor vehicle without insurance at the time of the accident. The Werleys undisputedly failed to insure the dirt bike. Indeed, they never made inquiries as to whether it was possible to insure the dirt bike and affirmed that it was not "intended for coverage" under the multi-vehicle policy. Thus, the Werleys had no reasonable expectations of UIM coverage for the dirt bike under the Multi-Vehicle Policy.

It is also a basic principle underlying the MVFRL that "the insured is entitled to receive the maximum benefits for which he or she has paid premiums, and the insurer is required to provide coverage to the extent the insured contractually agreed to and paid for such coverage under the terms of the insurance policy." *Erie Ins. Exch. v. Backmeier*, 287 A.3d 931, 946 (Pa. Super. 2022) (citations omitted), *appeal denied*, 303 A.3d 421 (Pa. 2023). The corollary to that is that the Pennsylvania Supreme Court "has declined to invalidate policy exclusions that would provide a disincentive to purchase insurance by allowing an insured to expand coverage at the expense of the insurer." *Heller v. Pa. League of Cities & Municipalities*, 32 A.3d 1213, 1222 (Pa. 2011).

This is the underlying principle in *Gallagher* and *Donovan* as well as *Eichelman* and *Mione*: that the insureds are entitled to get what they paid for in terms of UIM coverage and stacking. The *Donovan* and *Gallagher* Courts held that the household exclusion was unfairly depriving the insureds of stacked coverage that they elected and paid for with higher premiums. In *Eichelman* and *Mione*, the insured did not pay for UIM benefits on the vehicles involved in the accident and could not therefore complain of a denial of the benefit of

22

stacking by way of the household vehicle exclusion. So, too, here, the Werleys never paid any premiums for the off-roading dirt bike. Invalidating the household vehicle exclusion would provide the Werleys with benefits for which they never bargained. *See Nationwide Mut. Ins. Co. v. Riley*, 352 F.3d 804, 810 (3d Cir. 2003); *see also Eichelman*, 711 A.2d at 1010 ("If appellant's position were accepted, it would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household.").

Further, Mid-Century never contractually agreed to insure the Werleys for the risks associated with the family's use of the dirt bike. This case is distinguishable from *Gallagher,* where GEICO insured both the host-vehicle motorcycle policy and the second-priority automobile policy. *Gallagher*, 201 A.3d at 132–33. GEICO was well-situated to understand the full scope of the risks implicated by all the insured's vehicles and could adjust premiums accordingly. *Id.* at 138. Mid-Century, on the other hand, had no knowledge at all of the Werleys' dirt bike. Because the Werleys failed to disclose information about that vehicle, who was driving it, and in what contexts, Mid-Century was poorly situated to understand the total risks posed by the vehicles in the Werley household. In other words, the Werleys urge us to compel Mid-Century to cover risks that Mid-Century had no reason to know existed. But "[i]f this result were allowed, it would most likely result in higher insurance premiums on all insureds . . . since insurers would be required to factor expanded coverage cost into rates charged for underinsured motorist coverage," *Eichelman*, 711 A.2d at 1010, and could, in time, foster a state insurance system that is "prone to abuse." *Mione*, 289 A.3d at 531 ("One could waive the (expensive) . . . UIM

23

coverage on one's motorcycle policy with one insurer, knowing full well that one has ample . . . UIM coverage on another (less expensive) household automobile policy with another insurer."). And that would undermine one of the MVFRL's recognized goals: "to stop the spiralling costs of automobile insurance in the Commonwealth." *Eichelman*, 711 A.2d at 1010.

In short, our conclusion furthers the policies underlying the MVFRL.

IV

Our role here is to predict how the Pennsylvania Supreme Court would rule if presented with the same facts. Because we predict that Court would find the household vehicle exclusion at issue is valid under the MVFRL, we will vacate the District Court's order granting the Werleys summary judgment and denying Mid-Century summary judgment and will remand this case to the District Court with instructions to enter judgment in favor of Mid-Century.

KRAUSE, *Circuit Judge*, concurring.

I agree with my colleagues that the District Court erred in holding that the Werleys were entitled to inter-policy stacking. But because I do not think the Werleys' reading of the Motor Vehicle Financial Responsibility Law (MVFRL) is unreasonable, I write separately to urge the Pennsylvania General Assembly to clarify when two policies can be stacked and to include a waiver that applies to both inter- and intra-policy stacking.

The MVFRL does not specify whether stacking can occur only when the vehicle involved in the accident is itself insured. *See* 75 Pa.C.S. § 1738(a) (stating that stacking applies "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage"). In *Erie Insurance Exchange v. Mione*, 289 A.3d 524 (Pa. 2023), the Pennsylvania Supreme Court wrote that in order to stack policies, "the insured must have received UM/UIM coverage under some other policy first, or else Section 1783 is not implicated." *Id.* at 531. For the reasons the majority explains, I agree that the best reading of *Mione* and Pennsylvania case law is that the Werleys are not entitled to UIM coverage in the absence of a host-vehicle policy. But the District Court's contrary reading of *Mione* is at least plausible, given the MVFRL's silence on whether a host-vehicle policy is a prerequisite to stacking. Put differently, without any statutory guidance, it is not unreasonable to read "some other policy" the way Judge Smith did here: as referring to both first- and second-priority policies. Through simple amendment, the General Assembly could erase any lingering doubt about the availability of stacking in the absence of a host-vehicle policy.

1

At the same time, the General Assembly may wish to clarify that the MVFRL's prescribed stacking waiver applies to both inter- and intra-policy stacking. In this case, the Werleys had signed a stacking waiver on the Multi-Vehicle Policy, but as the majority explains, the text of that waiver, as it is currently set out in Pennsylvania law, serves to waive only intra-policy stacking. *See* 75 Pa.C.S. § 1738(d). Had that text clearly applied to inter-policy stacking as well as intra-policy stacking, this would have been a much more straightforward case. So here, too, the legislature could take the opportunity to forestall needless case-by-case litigation over whether stacking was appropriate. As the former Chief Justice of the Pennsylvania Supreme Court observed, "the General Assembly could cure the inconsistency between the [statutory waiver] and the remainder of Section 1738" with a simple revision. *Craley v. State Farm Fire & Cas. Co.*, 895 A.2d 530, 543 (Pa. 2006) (Cappy, C.J., concurring). Almost two decades later, the MVFRL still contains significant holes that could be readily patched. I therefore echo former Chief Justice Cappy in urging the General Assembly to bring much-needed certainty to this persistently ambiguous corner of Pennsylvania law.